# Wytheville.

ANDERSON'S ADMINISTRATOR & OTHERS v. SMITH & OTHERS.

### JUNE 16, 1904.

1. FRAUD—*Proof—Findings of Commissioner.*—The charge of fraud in
   the suppression of a will was distinctly and clearly made in com-
   plainant's bill, and is supported by the documentary evidence filed
   in the cause, and by the report of an experienced commissioner
   in chancery, who examined the witnesses and heard them testify
   and also considered the documentary evidence. This finding of the
   commissioner was approved by the trial court, and is now approved
   by this court.
2. INFANTS—*Guardian de Facto.*—One who enters upon the estate of an
   infant and takes the profits thereof, and continues to do so for
   several years after the infant becomes of age, will be held a guar-
   dian *de facto* of the infant during his non-age, and as agent after-
   wards.
3. FRAUD—*Participation—Joint and Several Decree Against All.*—If de-
   fendants have jointly participated in all of the fraudulent acts
   which entitles a complainant to a decree against them, the de-
   cree should be joint and several, with the right to the complain-
   ant to collect from either or all as he may be able, and should not
   undertake to segregate the sum which each defendant is to pay.

Appeal from a decree of the Corporation Court of the city of
Lynchburg, in a suit in chancery, wherein the appellees were the
complainants, and the appellants were the defendants.

*Reversed.*

The will which was the subject of controversy in this case
was in the words and figures following, to-wit:

VOL. CII—88

"June 13th.

"Whereas life is uncertain I deem it advisable to make some disposition of my property, viz.:

"My interest in the Main street property.

"My interest in the Church street property.

"My interest in the Magruders' home, Amherst county.

"The North Cut place, Amherst county.

"The little place adjoining the land sold to John A. Hunt, near C. L. Leftwich.

"(Three) bonds (or notes) I hold of R. H. Weaver, Memphis, Tenn., the proceeds of the sale of land deeded to me by William T. Anderson.

"The cement property in the county of Bedford.

"The debts, which I shall mention hereafter, I wish settled from the following property, viz.:

"Cement property in Bedford county, Va.

"North Cut property, Amherst county, Va.

"The three bonds of R. H. Weaver.

"The following debts must be satisfied from the above property, viz.:

"The debt on the Home house property, Church street, amounting to twenty-five hundred dollars. The amount on the Bell debt (that may be due) for which Stephen Adams holds a mortgage. The $ five hundred five *per cent.* Lynchburg bond to be returned to Mattie Hunt, from whom I borrowed it.

"Whatever may be due me of the fifteen hundred dollars I may have, it being my half interest in the lot sold Clelland, on Church street.

"After these debts have been settled, I wish the remainder of my property disposed of in the following manner:

"My interest (one-fourth) in the Main street storehouse, Lynchburg, Va., I wish to be divided between my adopted child, Anne Scott Hunt, Cassie Lee Hunt and William Dabney Hunt, the three children of Henry C. Hunt.

"What may be due me of the fifteen hundred dollars before mentioned I give to my adopted child, Anne Scott Hunt, to be used for her education.   My half interest in the home property on Church street (on which the house is situated) I give to Cassie Lee Hunt and Anne Scott Hunt, to be equally divided. The corner lot, 23½ feet, adjoining home house, on Church and Sixth streets, one half (say 11¼ feet) of which I purchased from Ella T. Hunt and Henry C. Hunt, I give to Anne Scott Hunt.

"The remainder of the North Cut property and the proceeds of that part of it bought by Thomas Adams I give to William Dabney Hunt after the five hundred five *per cent.* bond of Mattie W. Hunt shall have been returned.

"The little place known as the Sam Anderson place, containing thirteen acres, more or less, and adjoining the land sold to my brother, John A. Hunt, I give to him, John A. Hunt.

"To Mr. James H. Anderson I give whatever may be left (after the debts already mentioned have been settled) of the R. H. Weaver notes, to have after the death of my father and mother, they are to receive the interest as long as they live.

"My interest in the Court street lot must go towards paying the debt on storehouse, Main street.

"I wish the following articles to be disposed of as I shall hereafter direct; in the event of my death it will be more satisfactory:

"My silver mugs for Ella T. Hunt.

"My silver salt cellars and spoons for Hattie and Johnny, also pickle knife, with J. A. H. engraved on it.

"Silver dessert knives, in case, for Anne Scott Hunt.

"Silver cake knife for Sallie and Henry Hunt.

"Silver fish knife and sugar tongs, with E. A. O. engraved on it, for Cassie Lee Hunt.

"Pickle knife, with W. H. engraved on it, for Tommy and Florence.

"Silver sugar dish, with spoons, for Elsie Bolling.

"Table spoons for Dabney Hunt, half dozen.

"Tea spoons (1 dozen) to be divided between Scott and Cassie.

"Nice portfolio and two small white cologne bottles for Emma Adams.

"Crimson velvet Bible for Scott.

"White velvet Bible for Cassie.

"Candlesticks, with glass pendants, for Sallie and Henry.

"Little work-box on bureau for Isla, Alice's little girl.

"The picture of little boy, over mantle in my room, for Scott.

"Two guilt-framed pictures, over mantle, for Cassie.

"Father's picture for Ella.

"A portrait of Andy for Scott and one for Cassie.

"Little scones, with glass pendants, for Nannie Averet.

"My hanging lamp in parlor for Ella.

"My green rocking chair is to go with my chamber furniture, beds and bedding must be given to Scott.

"My dining table is for Scott.

"My illustrated Bible for Edith Aiken, Ada's daughter.

"Morocco Bible, with clasp, for Nancy's Cornelia, with some other little fancy or useful article.

"My piano is for Scott and Cassie Hunt.

"Brass andirons for Johnny Anderson.

"Travelling satchel for Mattie.

"Bonnet-box for Sallie.

"Gold pen Brother Tom gave me for Mr. Anderson.

"The picture of Christ for Ella.

"Little taper and brass shade for Lillian Hillsman.

"The book (Our Father's Home) for little Margaret Adams, Tommy's little girl.

"My nice paper cutter for Rosa Faulkner.

"I want my clothes to be given to those that can wear them, and, if Becky is with us, give her some of the plain ones. Articles that I have not mentioned divide them out with the family. Send Nancy and Martha some little reminder.

"My dresses that are unmade Ma must have, if she is living; if not, for those who need them most.

"Remember poor Fanny Scott.

"My books must be kept together for the children, except those I mention.

"Give to each of Rosa's girls a nice book.

"CORNELIA T. HOLCOMBE."

"My interest in the Magruder place, county of Amherst, State of Virginia, containing some 330 acres, more or less, I wish to be divided between Anne Scott Hunt and Cassie Lee Hunt.

"To James H. Anderson I give all interest I may have in the Cement property, county of Bedford.

"I have made this disposition of my property, thinking I have acted for the best, and hope that all whom it may concern will respect my wishes.

"CORNELIA T. HOLCOMBE.

"June 13, 1889.

"I want suitable guardians (business men) appointed for the children, that will study their interest and properly invest for them if need be.

"CORNELIA T. HOLCOMBE."

*Beasley & Moon* and *A. S. Hester,* for the appellants.

*Kirkpatrick & Howard, Caskie & Coleman, Whitehead & Whitehead* and *Blackford & Horsley,* for the appellees.

KEITH, P., delivered the opinion of the court.

Cassie Lee Smith and Shelton A. Smith, her husband, Anne Scott Hunt and William Dabney Hunt, the last two infants under twenty-one years of age, by Shelton A. Smith, their next friend, filed their bill in the Corporation Court of the city of Lynchburg, from which it appears that Cornelia T. Holcombe,

a widow, died in November, 1890, leaving no descendants, having first made and published her last will and testament, dated the 13th of June, 1889. This will was not produced in court for probate, and on the 16th of February, 1891, John Q. Adams qualified as the administrator of Cornelia T. Holcombe. Complainants say that they are ignorant whether the will was not then proved, because its existence was unknown, or because it was not regarded as a sufficient will. Adams, the administrator, proceeded to administer the estate and rendered partial accounts of his administration. The bill then charges that one James H. Anderson, who is named as a legatee in the will, became aware of its existence, and that he was interested in its provisions; that he thereupon demanded of the administrator that the will should be put to record and his rights under it recognized. "But your complainants regret to say that the heirs of said Cornelia T. Holcombe and the said John Q. Adams, her administrator, for the purpose of preventing your complainants from obtaining their rights under the said will, continued the policy which had been inaugurated at the outset of the administration, and, in order that the said will might not be admitted to probate and the interests of your complainants thereunder be thus made public, an agreement was, on the 8th day of August, 1893, entered into between Henry C. Hunt, Ella T. Hunt, Mattie W. Hunt, the widow and sole devisee of John A. Hunt, who was then dead, and the said James H. Anderson, a copy of which agreement is herewith filed as a part of this bill, marked Exhibit No. 5, of which contract John Q. Adams, the administrator of Cornelia T. Holcombe, was advised, as appears by the fact that he was a witness to the signature of one of the parties thereto. Under this contract it was agreed that the Cement property, 51 acres from the North Cut property, and $750.00 in money, should be turned over to the said James H. Anderson, who was an entire stranger to the blood of the said Cornelia T. Holcombe, was not a creditor of her estate, and had no

interest whatsoever therein, except that derived under the said will, which was being thus suppressed. In other words, the interest in the property of the said Cornelia T. Holcombe, which by her will was devised to your complainants, was to be sacrificed by this secret agreement, and hush money was to be paid to the said Anderson, and the will under which your complainants held a large interest in the estate of the said Cornelia T. Holcombe was to be forever suppressed."

The contract here referred to is as follows:

"This memorandum of agreement, made this 8th day of August, 1893, between Henry C. Hunt, Sallie Hunt, his wife, Ella T. Hunt and Mattie W. Hunt, widow of the late John A. Hunt, deceased, parties of the first part, and Jas. H. Anderson, party of the second part, witnesseth, that in consideration of the fact that the said party of the second part hereby relinquishes all claims against and all right, title and interest in and to the estate of the late Mrs. C. T. Holcombe, of Amherst county, Va., the said parties of the first part do hereby agree to pay to said party of the second part, seven hundred and fifty dollars ($750) in cash, and convey to him in fee simple a certain farm, known as the Eureka Cement property, belonging to the estate of the said C. T. Holcombe, situated on Blue Ridge, in the county of Bedford, and containing 143 acres of land, more or less. Also 51 acres of land to be cut off east end of farm known as North Cut, in the county of Amherst."

Ella T. Hunt declined to execute the deeds for which this contract provided, and on the 12th of August, 1896, a suit was brought by James H. Anderson in the Corporation Court of the city of Lynchburg against the said Ella T. Hunt, to require her to specifically perform this agreement. It was during the progress of this suit that the existence of the will became known to the judge of the court, and, at his suggestion, it was proved and admitted to record in the County Court of Amherst county, after much controversy, and, no appeal having

been taken from the order of that court, the paper is established as the will of Cornelia T. Holcombe.

The bill then goes on to show in much detail that the interest which complainants took under the will passed into the hands of John A. Hunt, H. C. Hunt, Ella T. Hunt and James H. Anderson. The bill contains many other matters which need not be specifically mentioned, except to refer to what is known as the Bell debt, which was a bond for $1,000, given by Mrs. Holcombe to secure the sum of $1,000 to William F. Bell, administrator *de bonis non* of George W. Bell, and as security for which she deposited certain notes as collateral, and also charged certain of her property in her will.

The prayer of the bill is that all persons having adverse interests may be made parties; that it may be ascertained of what property, real and personal, Mrs. Holcombe died seised and possessed; in whose possession it now is, and under what title it is held; what debts are due her, and to what debts the property should have been applied, and how her estate should have been disposed of under the provisions of her will; that John Q. Adams, administrator, be required to settle his accounts, and that he and his sureties be required to pay to complainants whatever may be ascertained to be due them; and that the property and money of which the said C. T. Holcombe died seised and possessed, or to which she was entitled, may be decreed to complainants according to the bequests contained in her will.

The administrator of James H. Anderson, and others of the defendants, filed their demurrers and answers, and the cause was referred to C. H. Sackett, an experienced and skillful commissioner, to state the necessary accounts. He, having examined witnesses and the documentary evidence offered by the parties, returned his report to the November term, 1901, and plaintiffs and defendants filed numerous exceptions thereto; and the Corporation Court was of opinion, as appears from its decree of April 18, 1902—

"That the contract between James H. Anderson and Henry C. Hunt and others, made the 8th day of August, 1893, and filed in the papers of this cause, marked 'Exhibit X,' was a fraud upon the rights of the plaintiffs under the will of C. T. Holcombe, deceased, and that all deeds and contracts and transactions by virtue or in furtherance of said contract are fraudulent and void so far as said deeds, contracts and transactions affect the rights of the plaintiffs under said will, except where the rights of innocent parties without notice are involved.

"That James H. Anderson, Henry C. Hunt, Mattie W. Hunt and Ella T. Hunt are *in pari delicto,* and the court doth refuse any relief to them among themselves, or their personal representatives, or any adjustment between them touching their dealings with the estate of C. T. Holcombe, deceased, except in so far as such adjustment may be necessary to protect and relieve plaintiffs and innocent persons without notice of said fraudulent contract.

"That the North Cut property, in the county of Amherst, together with the proceeds of that part thereof which was bought by Thomas Adams, which sale was afterwards abandoned, passed under the will of C. T. Holcombe, deceased, to William Dabney Hunt, and that he is entitled to take and hold the same under said will discharged of the debt charged thereon in favor of Mattie W. Hunt, it having been admitted in open court that the said debt has been paid."

The court declined to pass at that time upon so much of the controversy as related to the claim of George W. Bell's administrator, and referred the cause back to Commissioner Sackett for such amended and supplementary report as might be necessary to conform his former report to the principles decided in its decree. At a subsequent date the commissioner reported back to the court, and on February 9, 1903, a decree was entered passing upon the exceptions filed by plaintiffs and defendants, and decreeing in favor of Bell's administrator, so far as

that debt was secured by bonds deposited as collateral, and by the property upon which it was made a charge by Mrs. Holcombe, but held that with respect to any balance which might remain after appropriating whatever might be realized from those subjects the claim was barred by the statute of limitations. In this decree the court undertakes to carry into execution for the benefit of the plaintiffs in the bill the principles which it had decided in its decree of April 18, 1902. From this decree the administrator of James H. Anderson, Mary E. Roberts, and six others named as infants, applied for and obtained an appeal.

The first and principal ground of error assigned is, that the court erred in holding that the contract between James H. Anderson and the heirs of C. T. Holcombe was fraudulent and void as to Anderson, and that he was a party to such fraud and *in pari delicto* with said heirs.

The bill charges and the proof establishes that James H. Anderson, knowing that Mrs. Holcombe had left a will in which he was interested, entered into a contract with certain persons whose names are signed to it, by which this will was suppressed, and as the price of his co-operation the other parties to that contract agreed to pay him the sum of $750, and to convey to him in fee simple a tract of land known as the Eureka Cement property, belonging to the estate of C. T. Holcombe, and in addition thereto 51 acres of land to be cut off from the east end of the farm known as North Cut. The object and effect of this arrangement, had it not been detected and thwarted, was to deprive the complainants in the bill of their interest under the will of Mrs. Holcombe. It is idle to argue that this is not a sufficient charge of fraudulent combination. It is established that there was a will, and that will and the exhibits signed by the parties and filed with the bill establish the case. In addition thereto the whole subject was inquired into before an experienced commissioner. He heard and considered the testimony. He examined the documentary evidence, and his conclusions have been ac-

cepted by the judge of the Corporation Court. Under these circumstances we do not think it necessary to enter into a prolonged discussion of the circumstances attending this transaction, which in our opinion fully warrant the conclusion reached by the commissioner and the court.

This fraud thus established permeates and colors the entire case, and without going specifically into other errors assigned by the commissioner, we shall content ourselves with this statement—that there is nothing in the decrees to their prejudice.

Nor do we think the court erred in its decree with respect to the Bell debt. The property devised and the bond assigned for its security were all properly appropriated, and any balance which remained was barred by section 2920 of the Code.

Appellees assign certain cross-errors—

First. The failure of the court to require the parties involved in this effort to suppress the will of Mrs. Holcombe and deprive appellees of their estate, to account to them as guardian *de facto* during their minority, and as agent afterwards.

Secondly. Appellees assign as cross- error "that the court undertook to segregate the sums for which the estates of H. C. Hunt and J. A. Hunt, Miss Ella T. Hunt and James H. Anderson are liable. The parties jointly participated in the acts from which all the troubles in this case arose, and there should therefore be a decree against them jointly for the sums due to the infant beneficiaries under Mrs. Holcombe's will, with the right to said infants to collect such amount from either or all of them as they may be able."

We are of opinion that the first assignment of cross-error is well taken.

"Whoever enters upon the estate of an infant," says Chancellor Kent, in his Commentaries, side page 229, note B, "is considered, in equity, as entering in the character of guardian; and after the infant comes of age he may, by bill in chancery, recover the *mesne* profits."

"If a man intrudes upon an infant, he shall receive the profits, but as guardian; and the infant shall have an account against him in chancery as guardian. And if a man, during a person's infancy, receive the profits of an infant's estate, and continues to do so for several years after the infant comes of age, before any entry is made on him; yet he shall account for the profits throughout, and not during the infancy alone," Fonblanque's Eq., book 2, ch. 2, p. 235.

These and other authorities were considered by this court in *Martin's Admr.* v. *Fielder and Others,* 82 Va. 455, 4 S. E. 602. It was there held that an administrator purchasing the adult heirs' shares of their ancestor's land, and entering upon and receiving the rents and profits of the whole, will in equity be held accountable as guardian *de facto* of the infant heirs during their non-age, and as agent afterwards, for their share of the rents and profits. And this is but reasonable and just, for, as was well said by Judge Robertson in *Evans* v. *Pearce,* 15 Gratt. 513, 78 Am. Dec. 635, "One who makes himself guardian *de facto* is certainly not entitled to be treated with more favor than if he had been legally appointed."

The lower court in this case held, and we have approved its findings in that respect, that the contract between James H. Anderson, and Henry C. Hunt and others, made on the 8th of August, 1893, and filed in the papers as "Exhibit X," was a fraud upon the rights of the plaintiffs under the will of C. T. Holcombe, deceased, and that all deeds, contracts and transactions by virtue or in furtherance of said contract, so far as said deeds, contracts and transaction affect the rights of plaintiffs under said will are null and void. That being so, whatever the appellees were entitled to recover from the parties to that transaction was due by them jointly and severally, and we think that the Corporation Court should have so decreed.

There is a third assignment of error on behalf of appellees—because the court did not give judgment in favor of the infant

beneficiaries for one-fourth of the value of the Main street property, and one-half of the value of the Church street property as of the date of Mrs. Holcombe's death.

We think there is no merit in this contention, and that the decree of the Corporation Court in these respects should be affirmed.

Upon the whole case, we are of opinion that there is no error in the decrees, except with respect to the two assignments of error on behalf of the appellees, and the decrees of the Corporation Court must, therefore, in these respects be reversed and the cause remanded for further proceedings to be had in accordance with this opinion.

*Reversed.*