## Wytheville.

### Watts v. Watts' Executrix and Others.

#### June 28, 1905.

1. Equity—*Parties—Agents or Servants.*—Where a mother controls and manages a farm, and takes all the rents and profits arising therefrom, her sons who simply assist her in running the farm are not proper parties to a suit against the mother to have an account of such rents and profits.

2. Guardian de facto—*Tenant in Common—How Chargeable.*—A father who, as tenant in common with his infant son, takes all the rents arising from that portion of the land belonging to the son, occupies the relation of *de facto* guardian to his son, and must account for such rents with compound interest thereon; and if the father conveys the property to his wife and she takes possession of the whole land and receives the entire proceeds thereof, she becomes in like manner a guardian *de facto* of the infant from the date she receives the deed and takes possession, and is chargeable in like manner. It is immaterial that the father and his wife were successively tenants in common with the son. They are nevertheless chargeable as guardians *de facto.*

3. Tenants in Common—*Interest—Guardian de facto—Code, Sec. 3294.*—At common law a tenant in common could not have an accounting from the occupying tenant, in the absence of an express contract, even though excluded from the common property. This was changed at an early day by what is now Sec. 3294 of the Code, but this section was not meant to deprive an infant tenant in common from recovering compound interest from a guardian *de facto* who was his co-tenant.

4. Guardian de facto—*Tenants in Common—Rents—Ascertainment of Infant's Share.*—In ascertaining the amount of rents with which the *de facto* guardian is chargeable by reason of having used and enjoyed the infant's land which the guardian held in common with his own land, if the metes and bounds of the infant's land are known and ascertained, the rents of that boundary should be fixed and charged to the guardian, and not charge him merely with the infant's proportion of the rent of the tract as a whole.

5. PAYMENTS—*Gifts*—*Presumption.*—If a father is indebted to his son and
places money to the credit of the latter in bank, the presumption is that
this was intended as a payment on account, and to overcome this pre-
sumption the evidence must be clear and convincing.

6. PARENT AND CHILD—*Support*—*Application of Infant's Estate.*—It is the
common law duty of a father to support his child, if of ability to do so.
Where the child has property of its own, the court, in the application
of this rule, looks at the circumstances of the particular case, and de-
termines according to the right and justice thereof, having in view the
position and wealth of the parties.

7. PARENT AND CHILD—*Step-children*—*Support.*—A step-mother who is charge-
able as guardian *de facto* of her infant step-son, whose father is insol-
vent, should be allowed credit for the support and maintenance of said
step-son and the keep of his horse, where the support of the family
has devolved upon her.

8. TENANTS IN COMMON—*De facto Guardians*—*Improvements*—*Repairs.*—No
credit for improvements or repairs should be allowed to a *de facto*
guardian of an infant who is tenant in common of the infant.

Appeal from a decree of the Circuit Court of Tazewell
county in a suit in chancery.  Decree for defendants.  Com-
plainant appeals.

*Reversed.*

The opinion states the case.

*Henry & Graham* and *Chapman & Gillespie,* for the appellant.

*W. H. Werth,* for the appellees.

HARRISON, J., delivered the opinion of the court.

For some time prior to the year 1890, John G. Watts and
Hattie B. Watts, his wife, owned and lived upon a very valu-
able farm, containing, as shown by recent survey, 494 acres,
situated about three miles east of Tazewell Courthouse.

In 1890 Mrs. Watts departed this life, leaving surviving her
two infant sons, one of whom died soon after his mother leav-

ing surviving him his brother, R. Bowen Watts, the complainant in this cause. In 1892 John G. Watts was married again to a widow with four sons, all of whom came to live with him upon the farm mentioned.

On the 28th day of March, 1895, John G. Watts conveyed all of his interest in the farm to his second wife, Mrs. F. G. S. Watts, except 101 acres, known as the "Dill's Meadow tract," conveyed by him on the same day to A. P. Gillespie, trustee, for the benefit of his creditors. From the death of the first wife to the date of the deed conveying his interest in the farm to the second wife, the entire property was in the exclusive possession and control of John G. Watts, he enjoying and appropriating to himself the entire rents and profits. From the time that the second wife acquired the interest of her husband in the farm, she used and managed the whole tract, and received the entire rents and profits.

This suit was instituted by R. Bowen Watts, suing by his next friend and guardian, for a partition of the land, and to recover his share of the rents and profits, due him since the death of his mother to whose interest in the farm he had fallen heir.

By decree of August 31, 1901, the court settled the respective rights of the parties in the land and appoined commissioners to partition the farm in accordance with the directions of the decree. The commissioners made a report, from which it appears that they laid off by metes and bonds to the complainant 284 acres of land with the residence and other buildings thereon, as that portion of the farm to which he was entitled as the heir of his mother; that they laid off by metes and bounds the "Dill's Meadow tract," containing 101 acres, to the estate of John G. Watts, who had died before the partition was completed, subject to the deed of trust in favor of A. P. Gillespie for the benefit of creditors; and that they laid off to Mrs. F. G. S. Watts, by metes and bounds, 109 acres—that being the residue of the interest of John G. Watts which had been conveyed to her by him.

To this report no exception was taken by any party, and it was confirmed· by decree of December, 1901, and the several parties put into immediate possession of their respective interests; R. Bowen Watts having attained his majority on the 13th day of the preceding March.

The cause having been revived in the name of Mrs. F. G. S. Watts, executrix of John G. Watts, deceased, it was, by decree of August, 1902, referred to a commissioner to ascertain and report how much was due to the complainant on account of rents and profits from the estate of his father, and the credits, if any, to which the estate was entitled, and also to ascertain and report how much rent was due complainant, on account of rents and profits, from the defendants, Mrs. F. G. S. Watts and her two sons, D. H. Smith and J. T. Smith, for their alleged use and occupation of the land of complainant, together with any credits to which they were entitled.

The present controversy arises entirely upon the report made in response to this last mentioned decree, and the action of the lower court with respect thereto. These several contentions will now be considered.

We are of opinion that it was not error to dimiss complainant's bill as to the defendants, D. H. and J. T. Smith. As already seen, in 1895 John G. Watts conveyed the residue of his interest in the farm to Mrs. F. G. S. Watts, and after that time and up to 1900, the evidence shows that she controlled and managed the entire property and received the rents and profits of the whole place. It further appears that her sons, the defendants D. H. and J. T. Smith, by her permission and consent, assisted in running the farm, but this was not a sufficient ground for holding them responsible for the use and occupation of the land of complainant by their mother.

We are further of opinion that from the date of the death of Mrs. Hattie B. Watts to the date of the deed conveying the residue of his interest in the farm to the second wife, during which time he received the entire proceeds, John G. Watts oc-

cupied the relation of *de facto* guardian to his infant son, and, as such, became liable to account for the rents arising from that portion of the land belonging to his son, in accordance with the established rule for the settlement of the accounts of *de jure* guardians. And from the date that she received a deed to the residue of her husband's interest and took possession of the whole farm and received the entire proceeds thereof, Mrs. F. G. S. Watts became the *de facto* guardian of the complainant with respect to that portion of the rents and profits arising from his land, and became liable to a like accounting. These *de facto* guardians must, therefore, account for compound interest upon the complainant's share of the rents and profits received by them, respectively, during the period that each enjoyed the whole estate, for one who makes himself guardian *de facto* is certainly not entitled to be treated with more favor than if he had been legally appointed. *Evans* v. *Pearce,* 15 Gratt. 513, 78 Am. Dec. 635; *Martin's Admr.* v. *Fielder, &c.,* 82 Va. 455, 4 S. E. 602; *Garrett* v. *Carr,* 1 Rob. 208; *Peal's Admr.* v. *Thurmond,* 77 Va. 753; *Anderson* v. *Smith,* 102 Va. 697, 48 S. E. 29.

The general rule established by this line of authorities is conceded, but it is contended that they do not apply in this case because the father and his infant son were tenants in common, and that a like relation existed between the complainant and Mrs. F. G. S. Watts; that if liable at all appellees can only be held to account as tenants in common, in accordance with section 3294 of the Code. This position is not, in our view, tenable. *Evans* v. *Pearce, supra; Martin* v. *Fielder, supra.* In each of these cases the party held liable was tenant in common with infant defendants, and was required to account as *de facto* guardian for the rents and profits arising from the common property which belonged to the infant co-tenants. It is true the subject was not discussed in the opinions delivered

in these cases, but they were argued by able counsel, and the relation of the parties too plainly appears to admit of the suggestion that such relation was overlooked by the counsel and court.

At common law a tenant in common could not have an accounting from the occupying tenant, in the absence of an express contract, even though excluded from the common property. The statute, sec. 3294, was passed at an early day to change this harsh rule, and to require the occupying tenant to account to his co-tenant for the profits received by him in excess of his just share or proportion.   Under this statute an infant tenant in common has the same right that an adult tenant in common has to require the occupying tenant to account; but when he does account his liability is fixed by the same method of calculation with respect to interest that other people are held to who have received and retained the property of an infant.   The legislature manifestly did not intend to abrogate the established rights of infants in this regard.   The view of this statute, here contended for, would make the Legislature, while curing a palpable injustice imposed by the common law upon tenants in common, destroy the humane and meritorious rights of infants, by putting it in the power of an adult tenant in common to take possession of land in which his interest was small, receive and appropriate for years to his own use rents which belonged almost entirely to an infant co-tenant, and then escape the just liability attaching to a guardian *de facto* upon the ground that he was a tenant in common.   No reason is perceived why a father who occupies land as tenant in common with his infant child should not be, at the same time, the *de facto* guardian of the child with respect to its interest in the revenues arising from the common property.   It is the child's money that he is putting year by year into his pocket that he is chargeable with as *de facto* guardian.   He would have to account for that money each year to an adult co-tenant.   If he chooses to keep the in-

fant's money, and not pay it into the hands of some authorized person, who would be responsible as guardian, then, in fairness to the helpless child, he must be himself treated as guardian.

It must be conceded that if the whole of the common property was rented to a third person and the entire rent was paid to the father, he would be chargeable as *de facto* guardian with the child's share. Why should he not be alike chargeable when, instead of renting out the property, he solely occupies and uses it, and thus receives more than his share?

It is suggested that the interest of the complainant in the land was not accurately ascertained, and for that reason the appellees should not be held to account as guardians *de facto*.

The public records showed with sufficient certainty the number of acres of this farm belonging to the complainant, and the father knew with reasonable certainty where the most valuable portion of such interest was located. But that is certain which is capable of being made certain, and if there was any such difficulty as suggested it could have been easily removed by having the boundary of the child's land ascertained and settled. The child was under the control and management of the father and could do nothing. It was the duty of the father to ascertain the child's interest and have a guardian appointed to receive his share of the rents and profits. Having failed to do this, he must account as *de facto* guardian for the time he received the entire revenues, and Mrs. F. G. S. Watts must account in the same capacity for the time during which she received the entire revenues.

We are further of opinion that in ascertaining the amount for which appellees are respectively liable, the annual rental value of the 284 acres with the improvements should be taken, and not 284/494 of the annual rental value of the whole farm. The decree of the court under which the commissioners acted settled this to have been the land to which complainant's mother was entitled, and the report of the commissioners, which was confirmed without objection, defines it by metes and bounds. This

could have been as easily done when Mrs. Hattie B. Watts died as now. That it was not done was the fault of those who were using and occupying the land, and they cannot take advantage of this dereliction of duty to the prejudice of the infant heir.

We are further of opinion that the lower court erred in reducing the annual rental value of the 284 acres of land belonging to the complainant from $1,400.00, as shown by the report of the commissioner, to $852.00 *per annum*. The decided preponderance of evidence on this subject supports the finding of the commissioner. Inasmuch, however, as it is necessary to re-commit this cause to the commissioner for other purposes, and in order to avoid any possible injustice, the amount due from the appellees on this account will be left open, so that the commissioner may again consider the subject in the light of any additional evidence that may be introduced by either side.

We are further of opinion that in stating the account with John G. Watts, as *de facto* guardian, he should be credited with $2,886.53, as of October 16, 1901. It is contended that this was a gift, and not a payment on account. John G. Watts being indebted to his son at the time, the presumption is that the money when placed to his credit in bank was intended as a payment on account. To overcome this presumption the evidence must be clear and convincing, and this it is not.

We are further of opinion that it was proper to refuse credit to John G. Watts for the support and maintenance of complainant from 1890 to 1895, during which time he was in possession of the entire farm. It is the common law duty of the father to support his infant child, if able to do so. In the application of this rule the court looks at the circumstances of the particular case, and determines according to the right and justice thereof, having in view the position and wealth of the parties. *Evans v. Pearce, supra; Hauser v. King,* 76 Va. 731-736; *National*

*Valley Bank* v. *Hancock,* 100 Va. 101, 40 S. E. 611, 57 L. R.A. 728, 93 Am. St. 933.   Applying these principles to the case at bar, there was no error in holding that nothing should be allowed the father on this account.

Nor was there error in the ruling of the lower court that Mrs. F. G. S. Watts should be allowed compensation for the support and maintenance of complainant, and the keep of his horse, from 1895 to 1900, during which time she had possession of the entire farm.   During that time the father is shown to have been insolvent and the support of the family appears to have devolved upon Mrs. Watts.   Under these circumstances it would be inequitable to require her to pay the complainant rents and profits and not allow her credit for the compensation mentioned.

It is assigned, under rule IX, that the court erred in fixing the amount of this credit at $150.00 *per annum,* it being contended that the amount allowed is inadequate.   As the cause must go back to the commissioner, this item of credit to Mrs. Watts will be left open for further inquiry.

The decree of the lower court properly disallowed any credit for improvements and repairs, and no cross-error has been assigned calling in question this ruling.

We are further of opinion that it is necessary to a proper final decree that this cause be re-committed to the commissioner, who will change his findings upon the two subjects of further inquiry mentioned herein to such extent as he may consider justified by any additional evidence that may be offered with respect thereto; and will further reform his report in the particulars pointed out in this opinion, showing the amount due the complainant from the estate of John G. Watts, deceased, and from Mrs. F. G. S. Watts in her own right, respectively, after the changes indicated have been made.

For these reasons the decree appealed from must be reversed, and the cause remanded for further proceedings in accordance with the views expressed in this opinion.

*Reversed.*