# Richmond

## STARKE V. STORM'S EXECUTOR.

### November 20, 1913.

1. EQUITY—*Amended Bill—When Not Allowed.*—Where an amended bill sets up facts practically identical with those contained in the original bill, and sets forth no new matter that was not known at the time of the argument of the demurrer to the original bill, the trial court may properly refuse to allow it to be filed.

2. MASTER AND SERVANT—*Voluntary Services—Compensation—Implied Contract.*—A boy who voluntarily seeks employment in a household to clean shoes, brush clothes and do other incidental things about the house, and is accepted for that purpose, with nothing said as to compensation by either party, occupies the position of servant, and there is an implied contract on the part of the master to feed, clothe and lodge him, for otherwise he could not serve; but the law will not imply a contract to make any other compensation for such services, and, if there is no express contract, there can be no recovery therefor.

3. GUARDIAN AND WARD—*Guardian De Facto.*—A guardian *de facto* or *de sontort* is purely a creature of a court of equity, and is one who takes possession of an infant's property without right or lawful authority, and will be required to account therefor.

4. JURISDICTION—*Law—Equity—Personal Services.*—For personal services rendered by an adult the remedy at law is plain, adequate and complete, and there is no jurisdiction in equity.

Appeal from a decree of the Circuit Court of Albemarle county. Decree for the defendant. Complainant appeals.

                                                    *Affirmed.*

The opinion states the case.

*Gilmer & Gilmer,* for the appellant.

*Hanckel & Hanckel* and *Perkins, Perkins & Walker,* for the appellee.

HARRISON, J., delivered the opinion of the court.

In January, 1911, one year after the death of Edward H. Storm and about four years after the cause of action, if any, arose, W. F. Starke filed this bill asking that a court of equity award him a decree against the estate of Edward H. Storm for the sum of $6,736.84. Of this amount $1,736.84 was alleged to be for services rendered by the complainant to the deceased during his lifetime, and the remaining $5,000 was alleged to be damages due for the failure of Storm to provide complainant with an education. There was a demurrer to this bill, and thereupon the complainant tendered an amended bill which was practically a copy of the original bill, except that it eliminated the claim for $5,000 damages for failure to educate, and made W. F. Storm, a brother of the deceased, who was the sole beneficiary under his will, a party defendant. The circuit court refused to allow the amended bill to be filed, sustained the demurrer to the original bill, and ordered that it be dismissed. From that decree this appeal was taken.

There was no error in rejecting the amended bill. It set forth no new matter that was not known at the time of the argument of the demurrer to the original bill, and the facts are practically identical with those contained in the original bill, and in the exercise of a sound discretion the court properly refused to allow it to be filed.

In the case of *Bowe* v. *Scott,* 113 Va. 499, 75 S. E. 123, the syllabus, which is sustained by the opinion, states the law as follows: "While courts are liberal in allowing amendments of bills, and have discretion in the matter, still this discretion is in no sense arbitrary or capricious,

but is at all times hedged about and governed by rules which have long been established and recognized as binding upon the courts. Where the matter of amendment is similar to that contained in the bill, and was either known to the complainants, or might have been known to them, prior to the argument of the demurrer to the original bill, but was not brought forward until said demurrer was sustained on a ground involving its dismissal, the motion to amend comes too late."

The substantial facts as stated in the bill are as follows: That the complainant was born January 18, 1885, at Pavelsthewe, in Germany, and was at the age of thirteen living with his maternal grandmother, his father, mother and maternal grandfather being dead. About this time he learned that Edward H. Storm wanted a boy to wait upon him in the capacity of a servant. The boy, at the age of thirteen, voluntarily applied for the position and was accepted by Storm, who took him into his home, furnished him with shelter, food and clothing, dressing him in the livery of a servant, and in return receiving from the boy small services such as cleaning shoes, brushing clothes, cleaning guns, picking up game when Storm was hunting, etc. There was no contract, either express or implied, to pay the boy a consideration in money for his services when he went to live with Storm. This relation continued between the parties, in Germany, until July, 1910, when Storm came to New York bringing the boy with him. In February, 1910, they came to Albemarle county, where Storm bought a farm upon which he and the boy lived in the same relation and upon the same terms until September, 1905, when the complainant, then twenty years of age, voluntarily left the service of Storm and entered the railroad service.

The bill alleges that during the period prior to September, 1905, when the complainant entered the railroad ser-

vice, Storm had paid him at different times about $120, and that more than half that sum had been paid to him during the last year before he went to the railroad. The complainant remained in the service of the railroad from September, 1905, until November, 1908, when he returned to the service of Storm, at the age of twenty-three, where he remained until January, 1910, when Storm died. There is no allegation that the complainant ever asserted any claim for services against Storm during his lifetime. He alleges that when he returned from the railroad it was at the request of Storm by letter, saying that he would compensate him for work previously done, and would furnish him with board and lodging and pay him $400 per year to work as he had done before. The letter referred to is not produced.

Upon the facts alleged we are of opinion that no other relation but that of master and servant existed between these parties. Storm wanted a boy to wait on him and do the work of a servant. The boy sought the position and was accepted, not one word being said about wages. There was an implied obligation to feed, clothe and lodge the servant, otherwise he could not have served. The services were not, however, rendered with the master's assent under such circumstances as raised a presumption that the infant expected to be paid or the adult to pay. It was a contract for necessaries which the infant had the right to make, and which could be terminated at the will of either party.

The law is very well stated in Wood on Master and Servant (2nd Ed.), p. 14, sec. 9, as follows: "The same rule prevails as to an infant as to an adult in reference to merely voluntary services. No recovery can be had by him unless there was an agreement, expressed or implied, to pay him for his services, or unless the services were rendered at the request of the person sought to be charged, or with his assent, under such circumstances as raise a

presumption that the infant expected to have pay therefor, and that the adult expected to pay him. Thus in *DeFrance* v. *Austin,* 9 Penn. St. 309, the plaintiff, who was a minor, when not at work elsewhere, lived in his uncle's family and rendered services for him as the children of the family did, and during such time was supplied by the uncle with food and clothing. It was held that no implied promise to pay him for his services could be raised, and that no recovery could be had by him therefor. In *Wilhelm* v. *Hardman,* 13 Md. 140, the plaintiff, an infant, contracted with the defendant to work for him for his support and schooling. After having remained in the defendant's employ for some time, he broke off the contract and left his service, and brought an action for his services. The court held that inasmuch as the consideration for which the services were rendered was *actually necessary,* and as he had received the consideration *as fast as he performed his services,* and as he could not put the defendant in *statu quo,* he could not recover of him for such services, even though he offered to deduct therefrom *the value of the consideration received."*

In the case at bar, the relation between the parties being that of master and servant, and the contract arising under that relation having been fully performed, nothing more can be recovered.

The complainant has sought to maintain the jurisdiction of a court of equity to entertain his suit upon the theory that the relation of guardian and ward existed between the parties, and in support of this theory has contended that Edward H. Storm was guardian *de facto,* or *de son tort.*

This position is not tenable. A guardian *de facto,* or *de son tort,* is purely a creature of a court of equity, and is one who takes possession of an infant's property without right or lawful authority and will be required to account therefor. 21 Cyc. p. 20; *Anderson* v. *Smith,* 102 Va. 697, 48 S. E. 29; *Watts* v. *Watts,* 104 Va. 269, 51 S. E. 359.

In the case before us Storm did not take possession of any property that belonged to the complainant. It is not claimed that the complainant had a dollar of property when he entered Storm's service, but this difficulty is sought to be obviated by the contention that the wages alleged to be due constituted estate of the infant in the hands of Storm. It is unnecessary to decide in this case whether or not unpaid wages in the hands of an employer, due to an infant, can be treated as estate of such infant so as to hold the employer liable therefor as guardian *de son tort,* because, as already shown, there were no such wages in the hands of Edward H. Storm.

There is no merit in the claim of $5,000 damages for the failure of Edward H. Storm to have the complainant educated. No such obligation was implied in the contract of service; the complainant was under no restraint and could have left the service of Storm at any time.

As already seen, complainant left the service of Storm before he was twenty-one, and did not return until he was twenty-three. Storm died in little more than a year after such return. If there was anything due the complainant for services rendered during that period between his return from the railroad and the death of Storm he had a plain and adequate remedy at law for its recovery.

We are of opinion that there was no error in sustaining the demurrer and dismissing complainant's bill. The decree appealed from must, therefore, be affirmed.

*Affirmed.*