296 So.2d 170

**NATIONAL SECURITY FIRE & CASUALTY COMPANY**

v.

**David BRANNON, As In Invitum Or De Facto Guardian Of Lonnie Groves, As The Same Is Revived In His Capacity As Administrator Of The Estate of Lonnie Groves, Deceased.**

**Civ. 98.**

Court of Civil Appeals of Alabama.

Feb. 13, 1974.

Rehearing Denied March 13, 1974.

Robert M. Hill, Jr., Florence, for appellee.

Charles D. Rosser, Tuscumbia, for appellant.

WRIGHT, Presiding Judge.

This is an appeal from a judgment for plaintiff in a suit upon a policy of fire insurance.

David Brannon was the insured of a policy of fire insurance issued by appellant through its general agent in 1966. In 1969 the property insured was totally destroyed by fire. Appellant learned that Brannon was not the owner of the property insured and denied coverage for want of an insurable interest in the insured. Brannon filed suit on the policy. Trial was had before a jury with verdict and judgment for plaintiff. That judgment was appealed to this Court and was reversed and remanded by decision rendered August 25, 1971. That decision is reported in 47 Ala.App. 319, 253 So.2d 777. We stated:

"The sole issue litigated, and the important issue on this appeal, was whether the insured had an insurable interest when the policy was issued and when the loss occurred . . . ."

This Court found from the evidence that David Brannon had neither legal title nor equitable interest in the property insured; that his position was nothing more than a gratuitous agent for the owner and that he had no insurable interest as a matter of law. The opinion of this Court was that defendant-appellant had been entitled to have given its requested affirmative charge. The case was reversed and remanded to the trial court.

After remandment, plaintiff amended the complaint by changing from suit in an individual capacity to suit in a representative capacity as *Guardian In Invitum* of Lonnie Groves. Upon the death of Lonnie Groves, the action was revived by David Brannon as Administrator of the estate of Lonnie Groves. It was upon the complaint as amended that the matter again proceeded to trial. Upon trial, demand for a jury was waived by both parties and it was stipulated that submission would be upon the evidence contained in the transcript of the prior trial. Upon consideration thereof, the court again rendered judgment for plaintiff in the sum of $2,410.00.

We sum up what we have hereinabove related. David Brannon secured a policy of fire insurance on the property of another to which he had neither legal nor equitable title. The insured on the policy was David Brannon. The evidence submitted was that Brannon was the uncle of the owner Lonnie Groves. Lonnie's mother, the sister of Brannon, had requested Brannon to care for the property and Lonnie, as Lonnie was not too bright. For many years Brannon had rented the property, collected rents, maintained it, assessed the property in his name as administrator of the estate of his sister, Carrie Brannon, and paid the taxes though he was not in fact such administrator. If there was income remaining after expenses, such funds were given to Lonnie Groves by Brannon when needed. Whatever actions taken by Brannon were approved by Lonnie. Lonnie has never been legally declared a non-compos mentis.

The first time the case was tried, it was tried and argued in this Court upon the theory that though Brannon had insured the property in his own name, he was acting as the gratuitous agent of Lonnie Groves clothed with full authority to so act. The opinion of this Court was that the gratuitous agent of an undisclosed principal, though acting with full authority could not procure in his own name a valid policy of fire insurance on property, the title to which was in his principal.

This case has now returned after retrial upon the same evidence as before but in a different posture and upon a somewhat different theory.

The posture is different in that now plaintiff sues in the unusual representative capacity of an *invitum guardian* of the title holder. The evidence before this Court may be said to be different in that the rec-

ord of the evidence taken in the first trial has been abridged as permitted by Title 7, Section 773, Code of Alabama, and we are presented with an agreed abstract of the evidence. That abstract contains evidence which tends to contradict a finding of fact of this Court in its first opinion.

As previously set out above, our first opinion included the statement that the principal of David Brannon was undisclosed to the general agent of the insurance company at the time of the application for the policy. The submitted abstract contains the statement that Brannon testified that he did not tell the agent he had title to the property, but to the contrary, told him that he did not claim the property and that Lonnie Groves was present with him when the application for the policy was made. Thus in our consideration of this appeal, it is agreed there was testimony, though in conflict, that Brannon disclosed to the agent of the insurer that he was not the owner of the property sought to be insured and inference could be drawn that he was acting in behalf of Groves, though the capacity in which he acted was gratuitous and self-appointed and assumed without court appointment.

The difference in theory between the case as it first came and as it now comes is that the plaintiff, David Brannon, first sued in his own name on a policy of insurance issued to him as an individual. He now sues in the representative capacity of an *Invitum Guardian* for another, Lonnie Groves. In the first case he sought to show by the evidence that though he sued in his own name upon a policy issued to him, he had in fact secured the policy for the benefit of Groves and to protect Groves' property. His theory was that he was acting as an agent for Groves, an incompetent. This Court held that he had no insurable interest as a gratuitous agent and the policy was void. Brannon now says that though the policy was issued to him individually and as owner, he was in fact the *guardian in invitum* of Groves, and was acting in such capacity, and so dis-

closed his capacity to the general agent at the time of applying for the insurance.

Brannon contends the evidence shows him to be the *in invitum guardian* of Groves and in such relationship he had an insurable interest sufficient for the issuance of a valid policy of fire insurance.

 Alabama recognizes the office of *guardian in invitum*. Such is defined as one who assumes to act as guardian of a person non compos mentis, without an inquisition of lunacy and without proper authority. Such person may be charged as a trustee *in invitum* and compelled to account for his acts in a court of equity. Borum v. Bell, 132 Ala. 85, 31 So. 454; Moody v. Bibb, 50 Ala. 245; Whetstone v. Whetstone, 75 Ala. 495; Snodgrass v. Snodgrass, 176 Ala. 282, 58 So. 199. Such office has been called in other jurisdictions as "guardian de facto," "quasi guardian," "guardian de son tort" or guardian by estoppel. Rear v. Olson, 219 Wis. 322, 263 N.W. 357; Words and Phrases, Vol. 18A, p. 708. Such person or office is purely a creature of a court of equity. Starke v. Storm's Ex., 115 Va. 651, 79 S.E. 1057. It was stated in Beall v. Smith, 9 Ch.App. 85,

> "Every person so constituting himself officiously the guardian, committee and protector of a person of unsound mind does so entirely at his own risk, and he must be prepared to vindicate the necessity and propriety of his proceedings, if they are called in question, and to bear the consequences of any unnecessary and improper proceedings."

The question then presented is—was there evidence that Brannon by acts of assessing and paying taxes, renting and collecting rents, repairing and maintaining the property, and paying over to Groves the income after expenses, took upon himself the duties and responsibilities of an *in invitum guardian*? We think there was such evidence sufficient for the court to make such finding.

What are the duties and responsibilities of an *in invitum guardian*? It was said in Moody v. Bibb, supra, as follows:

"It follows from this, that if Moody undertook to act as the guardian of Rufus R. Sims, he was bound to regulate his acts by the law of his assumed office . . . When a person incurs such responsibilities, he may be discharged by complying with the demands of the law, as though his appointment had been regular and legal, in a proper court, or by the act of the ward himself, if he is sui juris."

We must conclude that Brannon by assuming and exercising control over the property insured became subject to all the responsibilities of conserving and protecting such property as is required of a legally appointed guardian. Zeideman v. Molasky, 118 Mo.App. 106, 94 S.W. 754; Moody v. Bibb, supra. One of the duties of a guardian would certainly be the insuring of his ward's property against the perils of fire. "[The guardian in the exercise of his duties must use the care and diligence with which] a careful and prudent business man manages his like personal affairs." Ramsey v. McMillan, 214 Ala. 185, 106 So. 848.

■ There can be no question but that a guardian has an insurable interest in the property of his ward. It is stated in 43 Am.Jur.2d, Secs. 466, 469—Insurance—as follows:

". . . Moreover, an insurable interest in property does not necessarily imply a property interest in, or a lien upon, or possession of, the subject matter of the insurance, and neither the title nor a beneficial interest is requisite to the existence of such an interest; it is sufficient that the insured is so situated with reference to the property that he would be liable to loss should it be injured or destroyed by the peril against which it is insured."

Brannon, accountable to the court or his ward for protecting and conserving the property, could have been found liable in an accounting for negligence in failing to insure against loss by fire. He thus had an insurable interest and the policy obtained from appellant through a general agent, though obtained in his own name, was not void.

The judgment of the trial court is affirmed.

Affirmed.

BRADLEY and HOLMES, JJ., concur.

## ON REHEARING

WRIGHT, Presiding Judge.

Appellant has applied for rehearing in this case charging that we erred in holding that appellee had an insurable interest in the property insured. The issue of insurable interest is the crux of the case.

It has been held that one who has either a legal or equitable interest in property has an insurable interest therein. It was stated in American Equitable Assur. Co. v. Powderly Coal & Lumber Co., 225 Ala. 208, 142 So. 37 as follows:

"In the early history of insurance, there was a tendency to require title and ownership as a basis of insurable interest, but later decisions have adopted a more liberal doctrine, and it is not now essential to an insurable interest that one should have a property in the thing insured, or an estate, legal or equitable; the term 'insurable interest' being more extensive than property or estate. Any qualified or limited interest in the subject of insurance is sufficient and an equitable interest is sufficient to support an insurable interest."

■ We do not see it necessary to proof of an equitable interest in a suit on the policy, that such interest has first been established in a court of equity. Such proof is available in opposition to the plea

of lack of insurable interest. We have held that there was evidence to support the decision of the trial court that appellee had an equitable interest sufficient to amount to an insurable interest.

In the first appeal of this case the question of insurable interest was based upon the theory of the relationship of a gratuitous agent. We held such relationship gave rise to neither legal nor equitable interest in the property. Such was not the question in the case as it came on this appeal.

Appellant contends that even if appellee had an insurable equitable interest, the nature of such interest was not disclosed to its agent.

There is no warranty of ownership in the policy issued to appellee. The evidence is in conflict as to what the agent was told as to ownership at the time of taking the application. The agent stated he was informed that appellee was the owner. It is stipulated that appellee told the agent he was not the owner. There is no testimony as to whether further information was requested by the agent as to appellee's interest.

■ In such a case, if no questions were asked as to the precise nature of his interest and the conditions of the policy did not require such disclosure, failure to do so must be shown to be fraudulent and material to the risk of loss in order to avoid the policy. 45 C.J.S. Insurance Sections 515 and 473(3).

■ Forfeiture of insurance policies are not favored by the law. Employers Insurance Co. of Alabama v. Crook, 276 Ala. 177, 160 So.2d 463. The evidence in this case, except for the testimony of appellant's agent, is that since the death of his sister in 1935, appellee's relationship to the insured property was in a representative capacity. There was no evidence that he claimed ownership in himself but to the contrary. It was a matter of record on the tax assessment sheets of the county and with the improvement assessment records of the City of Florence that the property belonged to the estate of appellee's deceased sister. Her only child was Lonnie Groves. The general agent of appellant had insured the property since 1962, though with another company prior to changing coverage to appellant in 1966. In no other instance did appellee claim ownership except as stated by appellant's agent. There was evidence that Lonnie Groves was present when the agent was allegedly told by appellee, that he appellee, was the owner of the property. There was a deed of record from appellee to Lonnie Groves to the insured property executed prior to the issuance of the policy. With this evidence before it, it was within the province of the court to disbelieve the testimony of appellant's agent as to appellee's averment of ownership.

The issue of standing or the legal right to bring an action on the policy in a representative capacity by one claiming to be a guardian in invitum was not an issue on this appeal. The sole question has been whether there was evidence to support an insurable interest in the property insured by David Brannon.

It is passingly strange that appellant, though seeking to void the policy, was at the time of the initial trial continuing to collect premiums thereon.

We adhere to our view that the evidence and its reasonable inference is sufficient to support the claim of an equitable interest sufficient to give rise to an insurable interest in David Brannon, and that failure, if there was such failure, to disclose the precise nature of such interest was insufficient to void the policy.

Rehearing denied, opinion extended.

BRADLEY and HOLMES, JJ., concur.