## CIRCUIT COURT OF HENRICO COUNTY

In re Estate of
Lloyd Henry Brown, III,
a minor

March 19, 2013

By Judge Catherine C. Hammond

This matter is before the Court on exceptions to reports of the Commissioner of Accounts. The question presented is the duty of a guardian in administering the estate of a child who lives with a parent.

In 2003, Lloyd Henry Brown, II, was murdered. His son, Lloyd, was one year old. He was the beneficiary of life insurance obtained through Mr. Brown's employer, Coca-Cola. Lloyd lived with his mother, Malikah Akbar. His social security benefits were paid to Ms. Akbar.

On September 20, 2004, this Court entered an Order appointing the Bank of America guardian of Lloyd's estate pursuant to Virginia Code § 31-8.1 (now § 64.2-1801). The Order authorized the guardian to "make distribution of income or corpus to or for the benefit of Lloyd Henry Brown, III, in the discretion of the guardian, without the need for further Court approval, at any time that the parent is unable to completely fulfill the parental duty of supporting the child, the parent cannot for some reason be required to provide for such support, or in those circumstances where a proposed distribution is beyond the scope of the parental duty of support." The Order also provided that the Bank of America "have all of those powers described in Va. Code § 31-14.1(1) through (7), except that any expense exceeding $10,000 must have prior court approval."

Between October 2004 and July 2011, the guardian did not seek approval for any distributions.

On August 20, 2010, the Commissioner of Accounts filed a report challenging distributions made by the Bank of America in 2009. The Commissioner stated that he "believe[d] the Guardian has misinterpreted its discretion under guardianship law and the Court's Order," pointing to disbursements of $8,290 from income and $36,064 from principal to Ms. Akbar. The Commissioner reported:

> During the twelve-month accounting period, $18,740.00 has been disbursed to mother, without documented receipts, for monthly living expenses. In addition, the Guardian in

September 2009 commenced the additional payment of $800.00 per month in rent payments to pay the entire rent for mother and child in a new apartment, furnished with principal disbursements.

On February 7, 2011, the Commissioner of Accounts filed another report challenging distributions made in 2010. For the year 2010, the guardian had distributed $33,960 to Ms. Akbar for living expenses while Ms. Akbar remained unemployed. In June 2011, the Commissioner issued a summons to the Bank of America requiring proof of compliance with his two previous reports.

On August 11, 2011, the Bank of America first filed a petition for aid and guidance. By that time, the guardian had been making monthly payments to Ms. Akbar for over two years.

On April 23, 2012, this Court heard evidence with respect to the two reports of the Commissioner of Accounts and the guardian's exceptions. The evidence showed that, in January 2009, Ms. Akbar lost her job and asked the guardian for money. She remained unemployed for three years. The evidence also showed that Lloyd had some special needs. An employee of the trust department testified that it considered all the circumstances and decided that the minor's estate should pay $2,030 per month for monthly living expenses, beginning in April 2009. In October 2009, the bank added $800 per month to provide rent money. The bank also paid for health insurance. At the 2012 hearing, the minor's guardian ad litem, Ms. McCabe, agreed that some money was needed from the child's estate to help his mother provide basic necessities.

On May 24, 2012, this Court entered an Order approving some of the disbursements already made, limited to $1,300 per month. The Bank of America had to reimburse the minor's estate in the amount of $18,360, which was the total amount exceeding $1,300 per month, for the period up to the end of 2010. The Bank of America also had to reimburse the minor's estate $5,084 for commissions received in 2009 and 2010 and pay the guardian ad litem's fees in the amount of $3,135.

On June 8, 2012, the Commissioner filed his supplemental report for the 2011 calendar year. The Commissioner adopted this Court's ruling and disallowed any distributions that exceeded $1,300 per month. By then, the Bank of America had already paid a total of $20,060 in 2011 to Ms. Akbar, over and above payments of $1,300 per month. The Bank of America filed exceptions to the June 2012 report.

On October 26, 2012, the Commissioner filed a report for the 2012 calendar year, January through March. (A successor guardian was appointed in July 2012.) Again, the Commissioner did not approve anything over $1,300 per month. Distributions totaled $7,075 during these three months. Using the $1,300 per month limit consistent with the Court's 2012 Order,

the Commissioner called for the Bank of America to refund $3,175 to the estate. The Bank of America filed exceptions to the October 2012 report.

The Bank of America argues that it should not be required to reimburse the estate $23,235 for the 2011 and 2012 distributions, as it would be unduly harsh and inequitable. The Bank of America points out that the 2012 Order never questioned the Bank of America's good faith efforts at compliance with the 2004 Order and that the Court's disallowance of certain distributions was with respect to their degree, not their nature. Further, the Bank of America argues that it sought aid and guidance from the Court as of August 2011, before some of these distributions were made. Finally, the Bank of America argues that it actually lost approximately $1,000 per year in administering the estate.

The basic question has not changed in each of the exceptions filed by the guardian: whether the guardian properly invaded the child's estate under the terms of the 2004 Order.

The 2004 Order of appointment essentially tracks the statute, which protects the child from having his money spent by the adults in his family. Section 64.2-1801 provides that the guardian of a minor's estate *"shall not"* make any distribution *"to or for the benefit of a ward who has a living parent,"* except under defined circumstances. (Emphasis added.) This is because every parent has the duty to support his or her children.

Even before the statute was enacted, the common law imposed a duty on the parents to support infant children. *McClaugherty v. McClaugherty*, 180 Va. 51 (1942); *Watts v. Watts*, 104 Va. 269 (1905). There is always a risk that a parent will misunderstand the legal boundaries and conclude that the parent's interests and the child's interests are one and the same. For this reason, Section 64.2-1801 distinguishes the child who has a living parent, and no distributions are allowed unless the circuit court makes a finding that "(a) the parent is unable to completely fulfill the parental duty of supporting the minor, (b) the parent cannot for some reason be required to provide such support, or (c) a proposed distribution is beyond the scope of parental duty of support in the circumstances of a specific case." An analogy can be found in the law governing settlement of an infant's personal injury claim. A compromise of an infant's claim requires court approval. Va. Code § 8.01-424. Plus, settlement funds for the minor must be held in trust for the benefit of the minor, and the court may require that the trustee file annual accountings with the Commissioner of Accounts. *Id.* at subsection E. All of this oversight is intended to protect the child's money and preserve it until he is eighteen.

In the case at bar, the guardian did not produce evidence that all or even most of the distributions were needed because Lloyd's mother was unable to fulfill her duty or could not be required to fulfill her duty or that the distribution was beyond her duty of support. While the guardian does not address the provision in the 2004 Order, which requires prior court

approval for "any expense exceeding $10,000," the evidence showed that this $10,000 limit was exceeded in the first six months of 2009. Some common sense understanding must be used to prevent a guardian from spending $9,999 on separate occasions and then arguing that none of those distributions exceeded the cap clearly imposed in the Order. The guardian could have sought approval from the Court at any point during the mother's three-year period of unemployment but did not. Nor did the guardian provide a satisfactory explanation for its delay in seeking aid and guidance for almost a year after the Commissioner first questioned the guardian's actions. Nothing has materially changed since this Court ruled in May 2012. The Bank of America's exceptions are overruled, and the Commissioner's reports are confirmed.