# Richmond.

Kinney and Others v. Craig and Others.

November 23, 1904.

1. Equity—*Amendments—New Case.*—Amendments will not be allowed, in equity, which bring into the case a new and substantive cause of action different from that set out in the original bill, and which the complainant then intended to assert; but if, on the hearing on demurrer, defects are pointed out which the court sees can be remedied by amendments, and substantial justice requires it, it will permit amendments to be made which are not inconsistent with the original theory of the case, and which will enable the court to apply the evidence to the pleadings as amended, and do complete justice between the parties.

2. Equity—*Amendments—Bill Charging Fraud in Law—Amendment Charging Fraud in Fact.*—Where an original bill sets out facts sufficient to show that a conveyance from one of the defendants to another was fraudulent in law as to the complainant, and prays that it may be set aside, and, in the event that a part of the land thereby conveyed, upon which complainant's debt is specific lien, proves insufficient, that a personal decree be rendered against the grantor and for general relief, an amended bill charging that said conveyance was made with intent to hinder, delay and defraud the complainant in the collection of his debt does not make a new case.

3. Limitation of Actions—*Fraudulent Conveyances—Actual Fraud.*—The limitation of five years, prescribed by Code, section 2929, within which to bring a suit to set aside a voluntary conveyance, has no application to an attack on a conveyance on the ground of actual fraud.

4. Equity—*Amendments—Discretion—Appeal and Error.*—As a rule, the subject of amendment of pleadings in equity rests in the sound discretion of the court, and this court will not reverse the action

of the trial court permitting amendments, unless it appears that it has abused the discretion vested in it.

5. EQUITY—*Amendments at Hearing.*—It is not error to give liberty to amend a bill in equity at the hearing when the complainant's claim is not barred by act of limitations, no new parties are made, and the evidence discloses a good case, but the bill fails to aver all the facts necessary to afford the relief to which the complainant is entitled.

Appeal from a decree of the Circuit Court of Augusta county, pronounced in a suit in chancery, wherein appellants were the complainants, and appellees were the defendants.

*Reversed.*

The opinion states the case.

*C. S. W. Barnes,* for the appellants.

*Curry & Glenn* and *J. A. Glasgow,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

The appellants or those under whom they claim, on the 23rd day of August, 1887, entered into a written contract with one of the appellees, R. S. Craig, by which they agreed to sell to Craig, and he agreed to purchase, 720 acres of mountain land, lying and being in the county of Augusta, near Craigsville, for the sum of fifty cents per acre, the parties of the first part to the agreement to make a deed with special warranty to Craig, reserving a vendor's lien on the land for the payment of the purchase money; and twelve months after the execution of the deed Craig was to pay the purchase money in full, to be evidenced by his bond to be executed to the parties of the first part upon the making of the deed to him. On the 20th of March, 1892, the parties of the first part, having tendered to Craig the deed for the land, and Craig having refused to receive the same

and execute his bond for the purchase money, instituted their suit in the Circuit Court of Augusta county against Craig for the specific performance of his contract. In that suit appellants prevailed, and one Shepherd was appointed by the court to execute a deed for the land to Craig, and Craig was directed to execute his bond for the amount of the purchase money therefor. The deed was executed by Shepherd, commissioner, reserving a vendor's lien to secure the purchase money, and a bond was executed by Craig to the vendors, payable on the 11th day of February, 1894, for $360, and that suit was dismissed by decree entered therein June 7, 1893.

Craig not having paid his bond when it fell due, the bill in this cause was filed at the May term, 1894, in the Circuit Court of Augusta county, against the appellees, in which the foregoing facts were set forth, and the further facts charged, that on the 5th day of October, 1892, R. S. Craig, not having paid the debt evidenced by his bond, made over all his personal property by deed of gift to his two sons, Edward M. and Harry B. Craig, in consideration of love and affection, and the further consideration of one dollar in hand paid by said Harry B. Craig; and by a similar deed of even date and for life consideration, conveyed all his real estate, including the 720 acre tract, upon which the compainants held a vendor's lien, to William Patrick, trustee, for the benefit of grantor's children, Harry B., Edward M., Charles G., Albert S. J., and Cora N. Craig; that the debt due from R. S. Craig upon his said bond was still due and unpaid; and the prayer of the bill was that the court enter a decree setting aside the deed to William Patrick, trustee, and direct a sale of the said 720 acres of land upon which the complainants claim a vendor's lien, for the payment of said debt, and if it fail to sell for enough to pay the same that a decree might be entered against R. S. Craig for the balance, and for general relief.

During the progress of the cause, the court, on December 6, 1894, entered a personal decree against R. S. Craig. for the amount of the debt in question and interest, with the right to sue out execution therefor. On December 18, 1894, execution was issued on that decree, and returned, no property found, and on the 10th of December, 1895, the court, without in express terms setting aside the deed to Patrick, trustee, as prayed in the bill, decreed that the 720 acre tract of land be sold by commissioners appointed for that purpose at public auction, for the payment of the debt due thereon. That decree was afterwards modified by decree of June 23, 1897, so as to authorize the commissioners of sale to sell the land privately. On the 25th day of January, 1902, said commissioners of sale filed a report in the cause, stating that "after repeated efforts to sell said tract of land, both publicly and privately, they had been unable to do so, because it was mountain land which had been stripped of its timber, and was therefore unsalable." Upon the coming in of that report, a decree was entered on the 8th of March, 1902, committing the cause to a master to ascertain, (1) What other estate was owned by R. S. Craig at the time he entered into the contract of purchase of the 720 acre tract of land; (2) Whether the same was liable for the debt asserted in the cause; (3) What estate was owned by Craig at the time of the decree; and (4) Any other matter deemed pertinent.

Responding to said decree, Commissioner Holt reported to the May term, 1902, in substance, that at the time when R. S. Craig entered into the contract for the purchase of the 720 acre tract of land, he was seized of his home farm of 500 acres, etc.; of a tract of 197 acres, known as the Sulphur Springs tract; a store-house and lot in the village of Craigsville; and a lot of about one acre, known as the Wallace Mill, all in Augusta county, Virginia; that by deed dated October 5, 1892, R. S. Craig conveyed all this property to William Patrick, trustee,

for the benefit of his children, in consideration of love and affection and of one dollar, and that he was not then the owner of any estate, real or personal; that while the commissioner believed from the evidence presented to him that said conveyance was made for the express purpose of defeating this debt (due on the 720 acre tract), yet he was of opinion that as the bill did not distinctly charge that said conveyance was fraudulent, it could not be set aside and the property subjected in this cause unless the court saw fit to allow an amended bill to he filed alleging the fact.

To this report the complainants excepted on several grounds, chief of which was because the master reported that the bill was defective in not sufficiently charging that said conveyance was fraudulent and made for the purpose of defeating the payment of complainants' debt; and at the May term, 1902, the defendants demurred to said bill on the ground that it did not set forth any fact that would warrant the court in setting aside said conveyance. By decree of June 11, 1902, the court overruled complainants' exceptions to the commissioner's report, sustained the defendant's demurrer to the bill, but allowed the complainants to file an amended and supplemental bill, alleging fraud upon their rights in the execution of the deed to Patrick, trustee, and referred the cause back to the master for report upon the same subjects of inquiry that had been referred to him before, said inquiry to be made when process should have matured on the amended and supplemental bill which was at that time filed.

In the amended and supplemental bill, complainants set out the filing of their original bill and its allegations, and charge and allege that through mistake and inadvertence in drawing the same it failed to charge in terms that the conveyance to Patrick, trustee, was executed with intent to hinder, delay and defraud them; and then charge that said conveyance was ex-

ecuted with intent to hinder, delay and defraud them in the collection of their said debt, and pray that the same may be set aside, &c.

At the November term, 1902, the defendants demurred to the amended and supplemental bill on the grounds, (1) that it makes out a new case, and (2) that it does not appear on its face or otherwise that the facts therein stated, upon which the charge of fraud was based, were discovered after the filing of the original bill. By decree entered in the cause on December 22, 1902, the court sustained the demurrer and dismissed the amended and supplemental bill with costs. From this decree the case is before us on appeal.

The propriety of the ruling of the Circuit Court in sustaining the demurrer to appellants' amended and supplemental bill, is the sole question that requires our consideration.

The subject matter of the suit was the bond held by the complainants against the defendant, R. S. Craig, for the purchase price of the 720 acres of land, and the original bill filed sets out that claim of complainants; that they held a vendor's lien against the 720 acre tract, as security for the payment of the debt; that the debt was still due and unpaid; that the defendant, R. S. Craig, soon after the suit against him for specific performance of his contract of purchase of the 720 acre tract of land from complainants was begun, had made over all of his personal property, by deed of gift to his children, and by similar deed (deed of gift) of same date had conveyed all his real estate, including the 720 acre tract, to William Patrick, trustee for the sons and daughter of grantor, naming them, and copies of which deeds were filed with the bill as parts thereof; and the prayer of the bill is that "the court will enter a decree setting aside the deed from R. S. Craig, defendant, to William Patrick, trustee, for the benefit of his sons and daughter, which includes the tract of 720 acres; that a sale of the 720 acre tract be made, and if

it fails to bring enough to pay the debt of complainants, a decree be given them against R. S. Craig for the balance; and that the complainants have such other and further relief as is adapted to the nature of their case and is agreeable to equity and good conscience.

To the original and to the amended and supplemental bills the parties defendant are the same, viz: R. S. Craig, William Patrick, trustee; and the children of R. S. Craig, the beneficiaries. in the deed sought to be avoided. The subject matter of both bills is the same, and their object is the same, viz: to recover the debt of complainants out of the property of R. S. Craig liable therefor.

It is unquestionably true and well settled that amendments, will not be allowed which bring into the case a new and substantive cause of action different from that declared on, and different from that which plaintiff intended to assert when he instituted his action. *Tidball* v. *Bank*, 100 Va. 744, 42 S. E. 867. But does this amended and supplemental bill violate that rule? We think not. In the case just cited the original bill filed was for the purpose of collecting certain negotiable notes held by the complainant, which had been protested for non-payment, and notice of protest given to the endorsers; but the bill failed to allege that the endorser, whose estate was sought to be held liable for the notes, had notice of their dishonor, and failed to make the original debtors, the makers of the notes, parties to the suit. By the amended and supplemental bill the defects of the original bill, were supplied, and upon the demurrer to the amended and supplemental bill it was held that the amendments were proper, and that the demurrer should have been overruled. The opinion quotes from *New River Min. Co.* v. *Painter*, 100 Va. 507, 42 S. E. 300, as follows: "The rule generally prevailing seems to be, that such amendments will be permitted as have for their object the trial and determination of the subject

matter of the controversy upon which the action was originally based; but amendments will not be allowed which bring into the case a new and substantive cause of action different from that declared on, and different from that which plaintiff intended to assert when he instituted his action. If the plaintiff, in the amended declaration, is attempting to assert rights and to enforce claims arising out of the same transaction, act, agreement, or obligation, however great may be the difference in the form of liability as contained in the amended from that stated in the original declaration, it will not be regarded as for a new cause of action." The opinion further says: "That was a case at law, but the rule as to amendments is certainly not less liberal in equity than at law. If the contention of appellant's counsel were correct, a pleading which omitted some essential allegation could never be amended. This is clearly not the law. It is the settled practice in this State that such amendments can be made, and it would be a reproach to the administration of justice if they could not."

It will be observed that in the case at bar the original bill set out facts sufficient to show that the conveyance from the debtor, R. S. Craig, to William Patrick, trustee, was fraudulent in law, as to the complainants in that bill, and the only omission made in the original bill was that it did not charge in terms that the conveyance was made for the purpose of hindering, delaying and defrauding the complainants.

A conveyance, assignment, or transfer of the property of a debtor cannot be avoided by his creditors solely on the ground that it was made without a consideration deemed valuable in law, unless the suit for that purpose be brought within five years after the right to avoid the same has accrued (Code, sec. 2929), but this limitation does not apply where a deed is attacked on the ground of actual fraud. When the amended and supplemental bill in this case was filed, the complainants still had the

right to attack the deed from Craig to Patrick, trustee, on the ground that it was made to hinder, delay and defraud them in the collection of their debt, and it may well be asked why they should have been required to institute a new suit for that purpose, when the relief to which they were entitled could be afforded them upon the amendments being made that were made by the amended and supplemental bill.

It is well said by Barton, in his Chancery Practice, p. 346, that "the general rule as to amendment has been so often departed from that it is now scarcely possible to give any definite definition of what may be included in an amended bill," and he states the general rule to be that "amendments can only be granted where the bill is defective in parties, or in the prayer for relief, or in the omission or mistake of a fact or circumstance connected with the substance of the bill but not forming the substance itself nor repugnant thereto." At page 345, the same author says that the tendency of the decided cases is to relax the ancient rules, and to allow amendment whenever it best serves the ends of justice so to do.

It may be that the complainants in the original bill were of opinion that it would be sufficient for their relief to have the 720 acre tract of land, embraced in the deed to Patrick, trustee, subjected to the payment of their debt, but upon finding that this property had been denuded of its timber, which was the only value it had, neither upon reason or authority should they be denied the right to proceed against other property of their debtor liable to them for their debt, and to that end so amend the frame and structure of their bill as to obtain the relief to which they were entitled.

It was held by this court, in *Hanby's admr.* v. *Henritze's admr.*, 85 Va. 177, 7 S. E. 204, citing *Belton* v. *Apperson*, 26 Gratt. 207, that a plaintiff may, by his amendments, so alter the frame and structure of his bill as to obtain an entirely different relief from that asked for originally.

In *Holland* v. *Trotter*, 22 Gratt. 136, citing 1 Daniel's Ch. Prac. 401-2, it was held to be "the well settled practice of courts of equity, that where the plaintiff is advised that his original bill does not contain such material facts, or make such parties as may be necessary to enable the court to do complete justice, he may amend his bill by inserting new matter or adding new parties." This is substantially the rule as to amendments laid down in Story's Eq. Pl., discussed in sec. 883 *et seq.*

In 1 Daniel's Ch. Prac., 598, the author in discussing the same subject, says : "On hearing the demurrer the court will, where it sees that the defects pointed out by the demurrer can be remedied by amendments, and substantial justice requires it, make a special order at the hearing of the demurrer adapted to the circumstances of the case."

This is exactly what was done in the case at bar, upon the hearing of the demurrer to the original bill. There is nothing in the case of *Belton* v. *Apperson, supra,* and other authorities relied on by counsel for appellees which sustains their contention that the amendments of the original bill in this case were improper in that they make out an entirely new case.

What will constitute an entirely new case made by amendments to an original bill, is discussed in *Hurt* v. *Jones,* 75, Va. 341, and the amended and supplemental bill in this case does not, in our judgment, conflict with the views expressed in that case.

In *Neale* v. *Neale,* 76 U. S. 1, 19 L. Ed. 590, a suit in equity was instituted to enforce a parol contract concerning real estate, upon the ground that by act of part performance it was taken out of the operation of the statute of frauds. After the cause had been heard, the court of its own motion gave complainants leave to amend their bill upon payment of costs. The reason for this action of the court is not given, but the inference is that it was because of the subsequent proceedings in the case.

It appears that the court at the original hearing was satisfied that the evidence made out a case for relief, but different from the case stated in the bill, and as the pleadings must correspond with the evidence, it was necessary either to' dismiss the bill without prejudice, or give leave to amend. The latter course was adopted with the view, to save expense to the parties, and because such a course could not, by any possibility, work any harm to the defendant. The opinion says: "It is insisted that this proceeding was erroneous; that after a cause has been heard the power of allowing amendment ceases, or if it exists at all it cannot go so far as to authorize a plaintiff to change the framework of his bill and make an entirely new case although on the same subject matter, as, it is contended, was done in this instance under the leave to amend.

"This doctrine would deny to a court of equity the power to grant amendments after the cause was heard and before decree was passed, no matter how manifest it was that the purposes of substantial justice required it, and would, if sanctioned, frequently embarrass the court in its efforts to adjust the proper mode and measure of relief. To accomplish the object for which a court of equity was created, it has the power to adapt its proceedings to the exigency of each particular case, but this power would very often be ineffectual for the purpose unless it also possessed the additional power, after a cause was heard and a case for relief made out, but not the case disclosed by the bill, to allow an alteration of the pleadings on terms that the party not in fault would have no reasonable ground to object to. That the court has this power and can, upon hearing the cause, if unable to do complete justice by reason of defective pleadings, permit amendments, both of bills and answers, is sustained by the authorities." Among the authorities cited in support of this view, is Daniel's Ch. Prac., pp. 463-466.

After remarking, as is well recognized in the decisions of this

court, that the matter of amendment of the pleadings in a cause rests in the sound discretion of the court, the opinion in *Neale* v. *Neale, supra,* continues: "It is unnecessary, in the view we have taken of the power of the court over amendments at the hearing, to discuss the question whether the amended bill is materially different from the original bill. It is enough to know, if different, that the subject matter of both bills is the same, and that the contract, consideration, promise, and acts of part performance stated in the amended bill are stated with sufficient precision, and, if supported by proof, entitled the complainants to the relief which they seek at the hands of a court of equity."

The views expressed by the court in that case are similar to those expressed by this court in a number of cases, and by text writers. *Belton* v. *Apperson, supra; Hurt* v. *Jones, supra; Pettyjohn* v. *Burson,* 22 S. E. 508; 1 Barton's Ch. Prac. (2 Ed.), 345; Daniel's Ch. Prac., *supra.* See also 1 Ency. Pl. & Pr., 774.

Applying that view to the case at bar, we are of opinion that the Circuit Court erred in sustaining the demurrer to the amended and supplemental bill filed by the appellants.

Appellees assign as cross error the action of the Circuit Court in granting leave to appellants to amend their original bill. With reference to this assignment, we deem it only necessary to say, that the rule being well recognized that in the granting of leave to amend a pleading, the matter rests in the sound discretion of the court, and where the defendants have no reasonable ground to object to the proposed amendments an appellate court will not reverse the trial court for allowing pleadings to be amended, unless it appears that the discretion resting in the court has been abused.

When leave was granted the appellants to amend the original bill in the cause, the record showed that they were entitled to recover of the defendant, R. S. Craig, the debt they asserted

out of any property he owned when the debt was contracted; that by a deed of gift, fraudulent in law as to his creditors, Craig had made over property liable for the debt, to his children, and both the trustee and beneficiaries in that deed were before the court. But the bill did not, in the opinion of the court, aver all the facts necessary to show the right of the appellants to have the deed set aside as null and void and to subject the property it conveyed, or so much thereof as might be necessary, to the satisfaction of their debt. In view of this state of the record, there being no statutory limitation upon the right of appellants to attack the deed as fraudulent, to the benefit of which the appellees were entitled, existing when the leave to amend was granted, it was clearly a case in which the discretion of the court in granting the leave was properly exercised. *Tidball* v. *Bank*, *supra;* 1 Enc. of Pl. & Pr., *supra.*

It follows that the decree appealed from must be reversed and annulled, and the cause remanded, to be further proceeded with in accordance with the views expressed in this opinion.

*Reversed.*