# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## WATSON V. BRUNNER.

### November 18, 1920.

1. AMENDMENTS—*Equity.*—The rule as to amendments is not less liberal in equity than at law.

2. APPEAL AND ERROR—*Amendments—Discretion of Lower Court.*— The rule is well recognized, that in granting leave to amend a pleading, the matter rests in the sound discretion of the court, and, where the defendants have no reasonable ground to object to the proposed amendments, an appellate court will not reverse the trial court for allowing pleadings to be amended, unless it appears that the discretion resting in the trial court has been abused.

3. AMENDMENTS—*Equity Pleadings—General Rule.*—It is impossible to lay down a rule with reference to the amendment of equitable pleadings, which shall govern all cases. Their allowance must, at every stage of the proceedings, rest in the discretion of the court, and that discretion must depend largely on the circumstances of each case.

4. AMENDMENTS—*Not a Matter of Right—Section 6104, Code of 1919.*—Section 6104, Code of 1919, does not make it necessary for the trial court at every stage of the proceeding to allow amendments. Amendments are not matters of right, and should not be permitted to delay, impede, or embarrass the administration of justice.

5. AMENDMENTS—*Freely Allowed.*—Amendments are freely allowed, and are to be favored when they promote the ends of justice. It would be a reproach to the administration of justice to permit a substantial right to be sacrificed to a mere form which did not affect the rights of the parties, or the mode of procedure, which could be readily changed without injury or injustice to any one. The ends of justice should never be sacrificed to mere form, or by too rigid an adherence to technical rules of practice.

6. AMENDMENTS—*New Cause of Action—General Rule.*—A substantive cause of action, or a new cause different from that declared on in the original action, cannot be introduced by amendment. The plaintiff will not be permitted to abandon

the entire case made by his pleading, and make a new and different case by way of amendment.

7. AMENDMENTS—*New Cause of Action—Different Relief.*—If a plaintiff is not permitted to make a new case, he may by his amendments so alter the frame and structure of his bill as to obtain an entirely different relief from that asked originally.

8. AMENDMENTS—*Bill in Equity—New Cause of Action—Case at Bar.*—The original bill in the instant case alleged liability of defendant, a landowner, to discharge a debt due by a contractor to complainant for materials furnished by complainant for the construction of defendant's house. Complainant first sought to recover this amount in full from defendant landowner, by establishing either a personal liability claim against the latter, or by enforcing a mechanic's lien against the property. In conformity with the report of a commissioner, the trial court held that complainant had no mechanic's lien upon the property, and his demand was not a personal liability against defendant. Thereupon, complainant tendered a petition to the court, which he asked to be treated as an amended and supplemental bill in the cause, setting up an order from the contractor to the landowner to pay complainant $750 for materials furnished on defendant's house. This order was not referred to in the original bill.

*Held:* That the court's action in overruling the objection of defendant to the filing of the petition and treating the same as an amended and supplemental bill, was not error.

9. APPEAL AND ERROR—*Report of Commissioner—Exceptions.*—Exceptions to the report of a commissioner partake of the nature of special demurrers. A party excepting must put his finger on the error, that the court may see what it has to decide, and it is too late to do so for the first time in the appellate court, unless the report be erroneous on its face.

10. DEMURRERS—*Effect of Demurrer—Admissions.*—A demurrer admits to be true all allegations of fact.

11. APPEAL AND ERROR—*Report of Commissioner—Weight Attached to.*—The report of a commissioner, except as to errors apparent on its face, is *prima facie* correct, and where the evidence is conflicting the appellate court will not reverse the action of the trial court, overruling an exception to the report and confirming it, unless the findings of the commissioner are clearly erroneous. In the instant case, whether the appellant is precluded from challenging the findings of the commissioner, by reason of his failure to except to the report, or this court considers the report as if exceptions had been duly made, the result will be the same. In either event, the findings of fact must be accepted as correct.

12. ORDERS—*Assignment in Equity—Sufficiency.*—An order for the
payment of money is a sufficient assignment in equity if the
debtor would be protected in making payment thereon. No par-
ticular form is necessary.

13. ORDERS—*Sufficiency—Equitable Assignment—Case at Bar.*—An
order was drawn for $750 by a contractor on a landowner, pay-
able to a materialman who had furnished materials for a resi-
dence being erected on the land by the contractor. The land-
owner had notice of the order.

   *Held:* That the order was an equitable assignment, *pro tanto*, of
the fund in the hands of the landowner then due or there-
after to become due, to the contractor from the landowner,
on the contract price of the residence.

Error to an order of the Law and Chancery Court of the
city of Roanoke. Decree for complainant. Defendant ap-
peals.

                                                        *Affirmed.*

The opinion states the case.

*C. S. McNulty* and *Morris L. Masinter,* for the appellant.

*Jas. A. Bear,* for the appellee.

SAUNDERS, J., delivered the opinion of the court.

On March 1, 1917, G. W. Austin contracted to furnish all
the labor and material and erect a dwelling for Z. T. Wat-
son, in the city of Roanoke, at the price of $3,125, of which
$400 was to be paid when the foundation was in, $900 when
the roof was on, $1,000 when the plastering was completed,
and the balance when the house was finished. Austin con-
tracted with Brunner to furnish a large part of the lumber
and materials to be used in the construction of the house.
On June 29, 1917, Austin gave to Brunner the following
written order: "Mr. Z. T. Watson: Please pay to W. C.
Brunner $750.00 on materials furnished for your residence,

and charge to my account. (Signed) C. W. Austin." About this time Brunner also took steps to fix a personal liability upon Watson for the materials furnished for his house. The house was completed and Watson entered into possession thereof on or about August 3, 1917. On October 3, 1917, Brunner docketed a mechanic's lien against the house, and on October 6, 1917, brought the present suit. The bill set forth the steps which had been taken by Brunner to fix a personal liability upon Watson, and also the docketing of his mechanic's lien. The bill also set forth the fact that Watson had executed a deed of trust on the property to C. S. McNulty, Trustee, to secure to Kate L. Murray, a debt of $3,000, and claimed that the complainant's debt was superior to the debt secured to Mrs. Murray. After setting forth the facts, the bill alleges: "Your orator is advised, therefore, that he has a personal liability claim against the said Z. T. Watson, owner of the building aforesaid, which is enforceable in a court of equity, and in addition thereto he has an alternative remedy of enforcing his mechanic's lien against said property." The bill makes no reference to the order which Austin had given to Brunner for $750, and the prayer of the bill is that Brunner may be decreed to have a personal liability claim against Watson, and, in the event he is not entitled to such decree, that he be decreed to have a mechanic's lien against the building, and be given a personal decree against Austin, the contractor, and Watson, the owner, for the amount of his debt, and that the property be subjected to the payment thereof.

The defendants severally demurred to and answered the bill, denying any liability for the debt, or any lien of any kind for the claim. The case was referred to a commissioner on March 8, 1918, to report upon the claims of Brunner, and whether or not he had a lien for the amount thereof, and also to report any other matter deemed pertinent by him, or specially requested by any of the parties. The hear-

ing of the case before the commissioner was greatly delayed in order to suit the convenience of counsel. Depositions were taken at length by the parties, and directed wholly to the question of whether there was a personal liability on Watson for the debt, or whether Brunner had a mechanic's lien for the same, and counsel for Brunner, during the course of the examination, objected to going into the general account between Brunner and Austin, on the ground that Austin "must confine himself to matters and things pertinent to the enforcement of the lien set out in the bill." The commissioner finally made his report on March 14, 1919, in which he states that there was quite a volume of depositions taken of various witnesses, a number of exhibits filed, that counsel on both sides submitted briefs in writing setting forth their views, and that after consideration of the whole, he was of opinion that there was no personal liability on Watson for the debt, and that Brunner did not have any mechanic's lien. Under the general head of reporting any other matter deemed pertinent by him, or specially requested by any party to the litigation, the commissioner made the following report, at the special instance of Jas. A. Bear, attorney for the plaintiff, Brunner: "* * * that the defendant, Watson, had notice of the order from the defendant Austin, to the complainant, W. C. Brunner, dated June 29, 1917, for the sum of $750, by verbal notice from the said Brunner to the said Watson on June 20, 1917. This notice, in the opinion of your commissioner, is not such a notice as is required by section 2479 of the Code to create a personal liability against the defendant, Z. T. Watson, in favor of the complainant, Brunner. It may be an assignment of the defendant, Austin, issued to the plaintiff, Brunner, of this amount, but of this your commissioner does not undertake to say, as in his opinion it is not a question which he can deal with in this report, and is a matter that would have to be settled in other litigation between the parties." Brun-

ner excepted to this report, on the ground that the commissioner had not found in his favor as to the personal liability of Watson, and also because he had not found that complainant was entitled to a mechanic's lien.

On the next day after the filing of this report, to-wit, March 15, 1919, Brunner tendered his petition to the court, which he asked to be treated as an amended and supplemental bill in the cause, and was permitted to file it over the objection of the defendants. Thereupon Watson demurred to and answered the petition, and on May 27, 1919, the court entered an order overruling (1) the objections to the filing of the petition, (2) the exceptions which had been filed by Brunner to the commissioner's report, and (3) the demurrer of Watson to the petition, and treating same as an amended and supplemental bill, referred the cause to the commissioner to ascertain, among other things, the circumstances under which the order of June 29, 1917, was given, the amounts, if any, that were then or afterwards to become due from Watson to Austin, and whether, in his opinion, said order was given under such facts and circumstances as to make it an equitable assignment of any certain fund in the hands of the drawee, Z. T. Watson. The case then went back to the commissioner, further depositions were taken on the subject of the assignment, and on July 12, 1919, the commissioner filed his report in which he reviews the testimony, and comes to the conclusion that Brunner held an equitable assignment of $750 which was due by Watson to Austin, and that he was entitled to enforce this assignment against Watson. No exceptions were filed to this report, and when the case was heard the court entered a personal decree against Watson for $750, with interest. From that decree this appeal was taken.

Two errors are assigned to this decree. The first is to the action of the court in allowing the petition to be filed as an amended and supplemental bill in the cause, and the

second is to the action of the commissioner in finding that Brunner was entitled to an equitable assignment of $750. It may be stated in this connection that the evidence on the subject of the liability of Watson to Austin at the date of said order is in serious conflict, both Austin and Watson testifying that at that time Watson owed Austin nothing, and did not thereafter become indebted to him, while the testimony of Brunner is exactly to the contrary. The commissioner found that Watson was indebted to Austin in at least the amount of $750 at that time, giving in detail his reasons for that conclusion, which is based upon the evidence and exhibits.

The first assignment of error is, that the court erred in allowing the petition to be filed, and treating it as an amended and supplemental bill.

We have had occasion, time and again, to deal with the subject of amending equity pleadings, and many verbally differing statements of the rule relating to such amendments will be found in the Virginia cases. No fixed and invariable rule has ever been formulated, and in the nature of things, since the exercise of the court's discretion in each case rests upon the facts of that case, it follows that such a rule is incapable of establishment, but the general tendency is in the direction of increasing liberality in respect of allowing amendments, thereby enlarging the flexibility of judicial procedure to the end that substantial justice, unembarrassed and unimpeded by technical niceties and meticulous refinements, may be readily afforded. This tendency is indicated by section 6104 of the Code of 1919, which provides that "in any suit, action, motion, or other proceeding, hereafter instituted, the court may at any time, in furtherance of justice, and upon such terms as it may deem just, permit any pleading to be amended, or material supplemental matter to be set forth, in amended or supplemental pleadings. The court shall, at every stage of the proceedings, disregard any

error or defect which does not affect the substantial rights of the parties. If substantial amendment is made in pursuance of this section, the court shall make such order as to continuance and costs as shall seem fair and just."

This court has declared in *Standard Paint Co.* v. *Vietor,* 120 Va. 595, 91 S. E. 752, that this section should be liberally construed, and in *Tidball* v. *Shenandoah National Bank,* 100 Va. 744, 42 S. E. 868, that "The rule as to amendments is not less liberal in equity than at law."

[1] It was jestingly said of Chief Justice Charles Doe, of New Hampshire, who was wont to allow amendments transforming a declaration at law into a bill in equity, or adding a bill in equity to counts at law, that he would allow an indictment for murder to be amended into a declaration in debt, or *vice versa.* This court has not reached the latter liberality of attitude towards amendments, but is fully satisfied that its powers in this respect should be exercised to secure substantial justice in a speedy and inexpensive form.

The Virginia cases dealing with the amendment of pleadings in equity are numerous and instructive. Many of them will be found referred to in the opinions in *Belton* v. *Apperson,* 26 Gratt. (67 Va.) 207; *Hurt* v. *Jones and wife,* 75 Va. 341; *Kinney* v. *Craig,* 103 Va. 158, 48 S. E. 864, and other cases to be hereinafter cited. It is laid down in these cases that no fixed rule can be formulated that will govern all cases, but that each case must depend largely on its own special circumstances. It is also stated that, in consideration of the subject, the ends of justice should never be sacrificed to mere form, or too rigid an adherence to technical rules of practice.

[2] The rule is well recognized, that in granting leave to amend a pleading, the matter rests in the sound discretion of the court, and where the defendants have no reasonable ground to object to the proposed amendments, an ap-

pellate court will not reverse the trial court for allowing pleadings to be amended, unless it appears that the discretion resting in the trial court has been abused. *Kinney* v. *Craig,* 103 Va. 158, 48 S. E. 864.

No invariable rule can be laid down with respect to the amendment of equitable pleadings. Their allowance rests largely in the discretion of the court, to be determined by the *special circumstances of the case.* (Italics supplied.) On application to amend, justice should not be sacrificed to form, or by too rigid an adherence to rules of practice. *Glenn* v. *Brown,* 99 Va. 322, 38 S. E. 189; *Alsop* v. *Catlett,* 97 Va. 364, 34 S. E. 48.

[3] It is impossible to lay down a rule with reference to the amendment of equitable pleadings, which shall govern all cases. Their allowance must, at every stage of the proceedings, rest in the discretion of the court, and that discretion must depend largely on the circumstances of each case. The ends of justice should never be sacrificed to mere form, or by too rigid an adherence to technical rules of practice. *Ratliff* v. *Sommers,* 55 W. Va. 30, 46 S. E. 712, 1 Ann. Cas. 970.

The continual deprecation, in the cases cited, of too rigid adherence to forms and rules of practice, and the insistence of liberality in allowing amendments as a means of securing substantial justice, is impressive evidence of the judicial tendency heretofore noted.

In *Bowe* v. *Scott,* 113 Va. 499, 502, 75 S. E. 123, 124, Whittle, J., quotes with approval the following language from Judge Grinnan of the trial court: "When the proceedings in the cause have reached the stage that they have reached in this suit, a motion to file an amended bill is received with reluctance, and not granted but for *some good reason.*" (Italics supplied.) "If such an innovation as is here desired were to be granted, it would open a precedent whereby suits might be greatly and unnecessarily prolonged,

to the inconvenience, delay and expense of litigants; instead of a plaintiff being at pains to state his whole case in his bill, as he ought to do, if possible, he would be at liberty to present his case to the court by piecemeal; and the announcement of the court's decision would serve no other purpose than to give notice that the bill needed additional allegations. While the courts are liberal in allowing amendments, the indulgence has never gone to this extent. * * * Courts have discretion in these matters, but this discretion is, in no sense, an arbitrary or capricious one. It is a discretion that is at all times hedged about and governed by those rules that have been long established and recognized as binding upon the courts."

After making the foregoing quotation, Whittle, J., continues: "The action of the court in overruling the motion for leave to file the amended bill is well sustained by authority. 1 Bar. Chy. Pr., 324, 327; *Alsop* v. *Catlett*, 97 Va. 364, 34 S. E. 48; *Vashon* v. *Barrett*, 99 Va. 346, 38 S. E. 200; *Jackson* v. *Valley Tie Co.*, 108 Va. 714, 722, 62 S. E. 964."

[4] The holding in *Bowe* v. *Scott, supra*, was approved by this court in *Starke* v. *Storm*, 115 Va. 651, 652, 79 S. E. 1057. In *Richmond College* v. *Scott-Nuckols*, 124 Va. 333, 340, 98 S. E. 1, 3, it was urged upon the court that Acts 1914, p. 641 (sec. 6104, Code 1919), made it necessary for the court at every stage of the proceeding to allow amendments, but in reply to this it was said: "It is true that the trial courts always permit amendments in furtherance of justice, and upon refusal to do so such action may be reviewed by this court; but such amendments are not matters of right, and should not be permitted to *delay, impede, or embarrass, the administration of justice.*" (Italics supplied.)

[5] In *DuPont* v. *Snead*, 124 Va. 177, 178, 97 S. E. 814, it is said: "Amendments are freely allowed and are to be

77

favored when they promote the ends of justice. It would be a reproach to the administration of justice to permit a substantial right to be sacrificed to a mere form which did not affect the rights of the parties, or a mode of procedure, which could be readily changed without injury or injustice to any one."

[6, 7] The citation last *supra* affords a correct statement of the general rule on this subject. The authorities agree that a substantive cause of action, or a new cause different from that declared on in the original action, can not be introduced by amendment. But as Judge Burks says in *Hurt* v. *Jones*, 75 Va. 353, "it may be difficult under the adjudications to state what is to be regarded as a new case within the meaning of the rule." The plaintiff will not be permitted to abandon the entire case made by his bill, and make a new and different case by way of amendment. But this rule has been much trenched upon in Virginia and other States. If a plaintiff is not permitted to make a new case, he may by his amendments so alter the frame and structure of his bill as to obtain an entirely different relief from that asked originally. *Belton* v. *Apperson*, 26 Gratt. (67 Va.) 207-8.

[8] The rule forbidding the introduction of an absolutely new cause, as applied to a situation falling within its terms, is a sound one. We have not reached the point that a plaintiff who loses an action for damages for malicious injury, will be allowed by amendment to institute an action of ejectment against the defendant. But the case in judgment by no means presents such a situation, or one of like, or parallel, character. Brunner's cause of action against Watson was the alleged liability of the latter to discharge the debt due by Austin to Brunner for materials furnished for the construction of Watson's house. Brunner first sought to recover this amount in full from Watson, by establishing either a personal liability claim against the latter, or by

enforcing a mechanic's lien against the property. The court held, in conformity with the report of the commissioner, first, that the plaintiff, Brunner, had no lien upon the property of Watson, and, second, that owing to Brunner's failure to proceed according to the requirements of the Code, his demand was not a personal liability against the defendant. The order referred to in Brunner's petition relates to the same alleged liability of Watson to discharge Austin's indebtedness to Brunner, and if established would be a discharge in part of that liability. The decree of the trial court did not ascertain that Watson was under no liability to Brunner to discharge any portion of the indebtedness of Austin to the latter, but merely that Brunner had no mechanic's lien, or personal liability claim under the statute. Moreover, the order set up by Brunner was not an alternative demand for either the personal liability claim, or the mechanic's lien. If the plaintiff had recovered his debt either by his mechanic's lien proceeding or by his personal liability contention, there would have been no occasion to assert, or bring to the attention of the court, his right, if any, to an equitable lien by virtue of the order. But failing to establish his claim in full, either as a personal liability demand, or by mechanic's lien proceedings, the claim for a part of the entire demand, represented by the alleged equitable lien, was proper matter to be thereafter brought before the court by amendment.

It will be noted that the citations, *supra,* announce certain fundamental propositions with respect to the amendment of equity pleadings:

First: The ends of justice should never be sacrificed to mere form, or by too rigid adherence to technical rules of practice.

Second: The matter of allowing amendments rests largely in the discretion of the court to be determined by the circumstances of the case.

Third: The amendments must not impede, or embarrass, the administration of justice.

Fourth: The action of the trial court allowing amendments will not be reversed, unless it appears that the discretion reposed in the court has been abused.

Tested by these principles, the amendment allowed in the instant case was proper. It does not embarrass, or impede, but aids the administration of justice. It does not appear to be an abuse of discretion. After decreeing in favor of the defendant upon the case set up in the original bill, the court was confronted with the claim asserted in the petition. If this was a meritorious claim, and on its face it was meritorious, it was capable of being asserted in a court of equity. The parties were already in such a court. To refuse to entertain the petition, and dismiss the original proceedings, meant another suit between the same parties, in the same court before the same judge. This would have been needless circuity.

But if we are mistaken in this regard; if the action of the trial court refusing to entertain the plaintiffs' petition would have effected, not only "an end of litigation," with respect to the order in the pending cause, but served to close the door to a new and independent proceeding by original suit, then surely that fact furnishes a potent reason why the trial court should have received the petition, treated it as an amended bill, and thereby afforded an immediate opportunity to litigate the merits of the alleged lien. It is better to protract litigation within reasonable limits than to do injustice.

The merits of the claim presented in the amended bill have in the result been approved both by the court of first instance and by this court on appeal. Treating the petition as an amended and supplemental bill, the defendant was afforded due process of law, a day in court, and full opportunity to make defense on the merits. His right to re-

cover costs as the successful litigant in the original proceedings was protected by the decree of the court, awarding him costs. Moreover, it will be noted that at the time the petition was presented and received, no final decree had been pronounced. The proceedings to that point had been entirely interlocutory. The trial court was in a position to determine whether the plaintiff was trifling with its authority. If that court had been of opinion that such was the case, and that the plaintiff was deliberately presenting his case piecemeal, with intent to harass the defendant and unduly prolong the litigation, there is no reason to believe that its discretion would have been favorably exercised upon the application to receive the petition and treat it as an amended and supplemental bill. This court does not find in the favorable action of the trial court upon this application any evidence of an abuse of discretion, and the contention that this action was erroneous is not sustained.

The second assignment of error in this case is the action of the trial court holding that the order for $750 given by Austin, general contractor, upon Watson, in favor of Brunner, constituted an equitable assignment.

The court, after allowing Brunner to file his petition, *supra,* and treating the same as an amended and supplemental bill, referred the issues raised by this petition and the answer thereto of Watson, to a commissioner for inquiry and report. The commissioner was directed to report upon the following inquiries:

(1) The circumstances under which the order set up in the plaintiff's petition, and bearing date June 29th, was given.

(2) What accounts, if any, existed at that time, between Z. T. Watson and G. W. Austin, drawer of the order.

(3) What amounts, if any, were due on the said date of June 29, 1917, or afterwards, from Watson to Austin.

(4) The court also requests the commissioner, J. H. Stew-

art, to report whether or not, in his opinion, the said order of June 29th was given under such facts and circumstances as to make it an equitable assignment of any certain fund in the hands of the drawee, Watson.

It will be noted that three inquiries related to ascertainments of fact. Under the fourth head, the commissioner was directed to derive and report a conclusion of law. The commissioner, in prosecuting these inquiries, was directed to use all relevant evidence theretofore taken by him. Supplementary to this evidence, the commissioner took additional depositions. In due course the commissioner filed his report which was responsive to the inquiries directed. The portions of this report falling under heads (1), (2) and (3) are herewith reproduced in full.

"(1) The order given by the contractor, the defendant, G. W. Austin, to the complainant, W. C. Brunner, of June 29, 1917, was given under the following circumstances:

"Under the terms of the contract between the defendant, G. W. Austin, and the defendant, Z. T. Watson, the original of which is filed with the deposition of Z. T. Watson taken before your commissioner on June 2nd, it provides that there was to have been paid to the said Austin by the said Watson, the sum of $400, when the foundation of the house was completed; $900 when the roof was on the house; $1-000 when the plaster was on the building, and the balance to be paid when the house was completed, the whole contract price being $3,125.00. The evidence shows that the $1,300 had been paid, the foundation and the roof having been completed as provided for in the contract, and your commissioner finds from the evidence before him that the plaster on the house had been completed at that time. So the evidence of W. C. Brunner taken before your commissioner under this reference, as well as the evidence of G. W. Austin, although Austin, in his answer to the question states that the plaster was not completed until in July. Later on

your commissioner will show why he thinks Austin is mistaken as to this time.  It is admitted by Austin that he was indebted in a considerable sum amounting to more than the amount of the order for $750, to the complainant, W. C. Brunner, and that this order was given in part satisfaction of that indebtedness from him *at* the contractor to W. C. Brunner who had furnished him with the material for the construction of the house.

"(2)  The only accounts or account existing between the defendant, Z. T. Watson, and G. W. Austin, the drawer of the order, was the account for the construction of the building mentioned in the record of this cause, which was being built by the said Austin for the said Watson at Waverly Place, city of Roanoke, Va., and for which the complainant, W. C. Brunner, was furnishing the material.  See deposition of Z. T. Watson taken before your commissioner on the 2nd June, 1919.

"(3)  Your commissioner finds that there was due from the defendant, Z. T. Watson, to the defendant, G. W. Austin, on June 29, 1917, the sum of $1,000, as at that time the plastering was on the building and the payment of $1,000 was due from Watson to Austin and this order given to the complainant, W. C. Brunner, for $750 was payable out of that $1,000.  In the former report made by your commissioner in this cause, he reports that Watson had notice of this order on June 29, 1917, and that report has been confirmed by this court.  The balance of the contract price for the construction of the house was afterwards paid by Watson to Austin or to other persons upon Austin's order, including the balance of this $1,000, which was due on June 29, 1919.

"The exhibits filed with the deposition of the defendant, Z. T. Watson, as cancelled checks with his deposition taken before your commissioner in making his former report, show that checks amounting to the sum of $745 were given to the said G. W. Austin by the said defendant, Z. T. Wat-

son, after the 29th day of June, 1917, the day on which the
order for $750 was given to the complainant, W. C. Brun-
ner, by the defendant, G. W. Austin, and that these checks,
as far as the endorsements and stamps of payments show
were collected by and paid to the said G. W. Austin by the
bank on which the checks were drawn. These checks are
filed with the record of the case and can be seen by the court.
In addition to these checks above referred to, paid to Aus-
tin personally, amounting to $745, by said Z. T. Watson
after June 29th, paid the other persons by check for Austin,
the sum of $138.20. These checks are filed as exhibits with
Z. T. Watson's deposition taken in former report. There
is also a check for $200 given to Austin, dated July 9, 1917,
for $200. This check seems to have been endorsed over to
the complainant W. C. Brunner, but Brunner claims in his
deposition, and it is not denied or contradicted by anyone,
that this $200 check was given for the specific purpose of
paying for some doors, sash and other material which had
been shipped from Richmond, Va., to go into this house and
was paid by him for this material in addition to the order
of $750. Various sums in addition to the amounts above
set out, amounting to the sum of $825, were paid by Watson
either to Austin or to those claiming under him after June
29, 1917, which makes the balance of the contract price and
in addition to the sum, Austin's books show that he did
$141 worth of extra work on the building which was paid
for by Watson, after that time. See exhibit No. 1, filed
with the last deposition.

"Referring to the question as to whether plastering on
the building was completed on June 29th, your commissioner
calls the court's attention to the fact that while the defend-
ant Austin testifies that it was not completed until July and
states that he bases this time upon the time that he paid
one Harper for completing the plaster and fixes that as July
1919, when the book from which he was testifying and had

in his hands at the time he was giving this testimony, shows that the payments were made to Jarper on June 29th and 30th, and not July 29th and 30th, as he states in his answers to questions. A certified copy which was made by your commissioner from the said book, is attached to and filed with the said deposition, marked No. 3 Exhibit No. 2 Extract from the book of said G. W. Austin which is a true copy and is certified to by your commissioner as having been taken from the said book which was produced before your commissioner by the said Austin while on the witness stand and from which he claims to have been testifying, shows there was paid by Z. T. Watson to the said G. W. Austin the sum of $683 after June 29th, the first payment being check of $100, dated June 30, 1917. From these statements your commissioner feels satisfied and so reports that the said G. W. Austin was mistaken in his answer as to the date on which the plastering was completed, the correct date being June 29, 1917, instead of July 29, 1917."

Under the fourth head the commissioner reported that he was satisfied that the "order drawn by Austin on the defendant Watson, in favor of Brunner, for $750, was an equitable assignment of that much of the fund in the hands of Watson then owing, or thereafter to become due, to the said Austin from the said Watson on the contract price for constructing said Watson's house."

This report was not excepted to, and by decree of July 15, 1919, was duly confirmed, and the defendant, Watson, was directed to pay to the complainant, Brunner, the sum of $750, with interest from June 29, 1917. As stated, *supra,* this action of the court directing the payment of this sum and treating the order as an equitable assignment is assigned as error.

[9] It is insisted by the appellee that the appellant having failed to except to the commissioner's report, is precluded from raising objections thereto in this court. The law upon this subject is perfectly well established.

"Exceptions partake of the nature of special demurrers, and hence, as the authorities say, a party excepting must put his finger on the error, that the court may see what it is to decide. It is too late, however, to do this for the first time in the appellate court, unless the report be erroneous on its face." *Cralle* v. *Cralle*, 84 Va. 198, 6 S. E. 12.

"Moreover, as no exception was taken to the last report of the commissioner, reporting the balance due, and as no errors appear on the face of the report, it is too late to raise objections in the appellate court." *Morrison* v. *Householder*, 79 Va. 627.

"An objection to an allowance of an item in a master commissioner's report cannot be raised for the first time in an appellate court." *Jackson* v. *Pleasanton*, 101 Va. 282, 43 S. E. 573.

It is not perceived that there are any errors appearing on the face of the commissioner's report in the instant case.

[10, 11] The appellant contends, in his reply brief, upon the authority of *Lee* v. *Willis*, 101 Va. 188, 43 S. E. 354, and other cases, that inasmuch as an issue is presented by the "pleadings and evidence," *quoad* the order *supra*, no exceptions to the report of the commissioner are necessary to entitle the same to consideration. The issue on the merits, in the view of the appellant, is "whether or not the order which Austin gave Brunner operated as an equitable assignment of funds in the hands of Watson." If this issue was presented by the demurrer, then manifestly the decision of that issue must be in favor of the appellee, since the demurrer admits to be true all the allegations of fact of the petition. On the other hand, if this issue was raised by the answer, it required testimony to be taken before a determination could be afforded. A commissioner was directed to take testimony relating to (1) the circumstances under which the order of June 29th was given, (2), the accounts between Watson and Austin, as of that date, and (3) the

amount due on that date, or afterwards, from Watson to Austin, and to report his findings. This report is now before this court, as it was before the trial court, and is based upon testimony which is largely conflicting. Even if this court should conclude to consider this report as if it had been duly excepted to, the weighty effect to be given to its findings, other than the conclusion of law which it contains, is established by numerous decisions of this and other courts.

"But the report, except as to errors apparent on its face, is *prima facie* correct, and where the evidence is conflicting, the appellate court will not reverse the action of the trial court, overruling the exceptions to the report and confirming it, unless the findings of the commissioner are clearly erroneous. The exceptions to the report partake of the nature of special demurrers, and serve to direct the attention of the court with reasonable certainty, to a specific point in controversy." *Hall* v. *Hall,* 104 Va. p. 776, 52 S. E. 558.

"While the court will, upon such matters, where the evidence is returned with the report, review and weigh the evidence, and if not satisfied that the commissioner has reached a right conclusion, overrule his finding, or findings; yet except as to errors apparent on its face, the report is *prima facie* correct, and where the evidence is conflicting, this court will not reverse the action of the trial court, overruling an exception to the report and confirming it, unless the finding of the commissioner is clearly erroneous." *Howard* v. *Gose,* 112 Va. 555, 72 S. E. 141.

The commissioner reported that on June 29, 1917, when Austin gave Brunner the order upon Watson for $750, the plastering on Watson's house had been completed, and under the contract between the parties Austin was entitled to collect from Watson the sum of $1,000 on the agreed price for the building. Further, that Watson had notice of the order

of June 29th, and at the time when it was presented Austin· was indebted to Brunner in an amount considerably in excess of $750, and the order was given in part satisfaction of that indebtedness, and was payable out of the "said amount of $1,000."

The evidence returned with the report is conflicting, but the commissioner heard the witnesses, and in addition supports his findings with extracts from the books of the defendant Austin, and the checks of Watson payable to Austin, and collected by the latter from the banks on which they were drawn.  Certainly this court is not prepared to say that the findings of fact of the commissioner are clearly erroneous.  Watson is shown by the checks filed to have made a number of payments after June 29, 1917, directly to Austin.  It may be that Austin used the proceeds of these checks in paying for labor, and materials, upon and for Watson's house, but if so the payments were made by him and not by Watson.  Austin undoubtedly owed Brunner a considerable sum for materials furnished, and it was competent for the former to direct the payment of this indebtedness out of any money due, or to become due, to him from Watson.  If he made such a sequestration, and Watson had notice of it, then it was the duty of the latter to make the application directed of the money in his hands.  Whether the appellant is precluded from challenging the findings of the commissioner, by reason of his failure to except to the report, or this court considers the report as if exceptions had been duly made, the result will be the same.  In either event, the findings of fact, for the reasons heretofore stated, must be accepted as correct.  In view of those findings was the commissioner justified in his conclusion of law that the order, *supra*, was "an equitable assignment of that much of the fund in the hands of Watson then owing or thereafter to become due to Austin from Watson on the contract price of Watson's house?

[12] Appellant contends that Austin was a sort of trustee of the amounts collected on account from Watson; but the payments made by Watson to Austin were valid payments, and protected the former. Brunner's claim was for materials furnished, and payment by Watson of the order of June 29th would have been a valid payment in part discharge of Brunner's debt, and good against Austin and all others. In the language of Judge Burks in the case of *Rinehart and Dennis Co.* v. *McArthur*, 123 Va. 570, 96 S. E. 834, referring to an assignment in equity, "It is sufficient if the debtor would be protected in making payment thereon."

Accepting as true the findings of fact of the commissioner, under the established rules of this court, do they support his final conclusion that the order, *supra*, was "an equitable assignment of that much of the fund in the hands of Watson, then owing or thereafter to become due, to Austin from Watson, on the contract price of Watson's house."

"No particular form is necessary to constitute an equitable assignment, of debt or chose in action. Order for value appropriating a fund, is sufficient." *Switzer* v. *Noffsinger*, 82 Va. 518.

"It is well settled that where one man having funds in another's hands draws on him an order, directing them to be paid to a third party, for value, such order will pass to the payee entitled to said funds, title which a court of equity will enforce." *S. V. R. Co.* v. *Miller*, 80 Va. 821.

"Nor was it error (referring to an order drawn by the general contractor on the owner in favor of a subcontractor) to allow the bank credit for orders drawn upon it by the general contractor in favor of subcontractors—it is the contract price of the building going directly to those who have done the work, and furnished the material." *Schrieber* v. *Bank*, 99 Va. 260-1, 38 S. E. 134, 135.

"There can be no doubt as to the doctrine that when for

a valuable consideration, from the payee, an order is drawn upon a third person, and made payable out of a particular fund, then due, or to become due from him to drawer, and is delivered to the payee, it operates as an equitable assignment *pro tanto* of the fund, and constitutes a lien upon it in the hands of him who owes the debt, or has possession of the fund out of which the order is made payable." *Hicks* v. *Roanoke Brick Co.*, 94 Va. 745, 27 S. E. 598. See also, *Rinehart & Dennis Co.* v. *McArthur*, 123 Va. 556, 96 S. E. 829.

The case of *Brill* v. *Tuttle*, 81 N. Y. 454, 37 Am. Rep. 515, is an instructive one, and of peculiar interest in this connection, owing to the similarity of its facts to the facts of the case in judgment. The order in that case is as follows:

"Mohawk, August 31, 1876.

"Jerome Tuttle:

"Pay Brill and Russell three hundred dollars, and charge the same to our account for labor, and materials performed, and furnished in the repairs, and alterations of the house in which you reside in the village of Mohawk.

"J. P. Ackerman and Sons."

Says the court: "It was a conceded fact that the drawers had a contract with the defendant for repairing his house, for which they were to receive $1,100.00, and the defendant testified that there was no set time when it was to be paid; that he expected it was to be paid when the work was completed, but advanced from time to time on account of labor, etc. * * * It was also an uncontroverted fact that the drawers owed the plaintiffs $300.00; and before drawing the order one of the drawers and one of the plaintiffs went together to the defendant, and the defendant testified that they then asked him to accept an order in favor of plaintiffs for $300.00, or give them a note or some security for

the money, and that he refused. * * * Immediately after this conversation, the order in question was drawn and delivered to the plaintiff. It was several times presented to the defendant but he refused to pay or recognize it. * * * It can hardly be conceived that under these circumstances any of the parties could have understood the order as a request to the defendant to advance $300.00, or any part of it, unless it was, or should become, due from him to the drawers on the contract and account for repairs, etc. Its language does not necessarily require such a construction, and, if ambiguous, should be interpreted with reference to the circumstances under which it was given. These are all inconsistent with such a view. The defendant had already absolutely refused to accept an order or give any note or security for the money due plaintiffs, and this was known to all the parties, and it would have been idle to draw a draft upon him for any other purpose than as a direction to pay to the plaintiffs such sums as were or might become due to the drawers on their account for repairs, etc. The direction in the order to charge the money to be paid thereon to that account, indicates, we think, sufficiently, in connection with the surrounding circumstances, that the payments were to be made out of the money due or to become due, on the account and all parties must have so understood it. If such is its true construction, it was an assignment of the fund within all the authorities. It was the plain duty, therefore, of the defendant, after notice of the plaintiff's rights, to apply the money on the order, and if he afterward paid it over voluntarily to the drawers, he did so in his own wrong."

[13] The conclusion of this court is that the order of June 29, 1917, for $750, drawn by G. W. Austin upon Z. T. Watson in favor of W. C. Brunner, was an equitable assignment, *pro tanto*, of the fund in the hands of Watson then due, or thereafter to become due, to the said Austin from

the said Watson, on the contract price of Watson's house, and that there was no error in the decree of the Court of Law and Chancery of the city of Roanoke, of date July 15, 1919, directing its payment, and that decree is affirmed.

*Affirmed.*

BURKS, J., *dissenting*:

I have no complaint to make of the general rule as to amendments of pleadings, stated in the opinion of the court, but of its application to the facts of this case. Nor should I feel it necessary to file a formal dissent, except for the apprehension that the case will be used as a precedent to uphold a laxity of procedure which will result in impeding and embarrassing the administration of justice, and of rendering nugatory the labors of counsel in the preparation of the case made by the pleadings, and the solemn adjudication of the court after careful examination and consideration of the case so made. Litigants should not be permitted to present their cases piecemeal to the court, and render an adverse judgment simply an invitation to amend the pleadings by the insertion of facts of which they had full knowledge when the original pleadings were filed. This is especially true, where the new facts added make a new and different case from that stated in the original pleading and require different relief.

I do not attach importance to our statute on the subject of the amendment of pleadings, quoted in the opinion of the court, and found in section 6104 of the Code of 1919. This section is taken without any substantial change from Acts 1914, p. 641. In my opinion, this section made no change in the existing law as it had been long administered in this State, but was simply declaratory thereof, certainly so far as equity procedure is concerned.

My opinion on the general subject of amendments was expressed in *DuPont* v. *Snead*, 124 Va. 177, 97 S. E. 812, quoted in the opinion of the court as follows: "Amendments are freely allowed, and are to be favored when they promote the ends of justice. It would be a reproach to the administration of justice to permit a substantial right to be sacrificed to a mere form which did not affect the rights of the parties or the mode of procedure, and which could be readily changed without injury or injustice to any one." This was but a statement of the general rule on the subject. But such amendments are not matters of right, and it has been found necessary to the due administration of justice not to extend the right so far as to permit litigants by this means to delay, impede or embarrass the administration of justice.

A fair statement of the rule will be found in the opinion of Mr. Justice Harlan in *Hardin* v. *Boyd*, 113 U. S. 761, 5 Sup. Ct. 773, 28 L. Ed. 1141, which is as follows: "In reference to amendments of equity pleadings, the courts have found it impracticable to lay down a rule that would govern all cases. Their allowance must, at every stage of the cause, rest in the discretion of the court; and that discretion must depend largely on the special circumstances of each case. It may be said, generally, that in passing upon applications to amend, the ends of justice should never be sacrificed to mere form, or by too rigid an adherence to technical rules of practice. Undoubtedly, great caution should be exercised where the application comes after the litigation has continued for some time, or when the granting of it would cause serious inconvenience or expense to the opposite side. And an amendment should rarely, if ever, be permitted where it would materially change the very substance of the case made by the bill, and to which the parties have directed their proofs. The rule is thus stated in *Lyon* v. *Talmadge*, 1 Johns Ch. 184, 188: 'If the bill be found defective in its prayer for relief, or in proper

79

parties, or in the omission or statement of fact or circumstance connected with the substance of the case, but not forming the substance itself, the amendment is usually granted. But the substance of the bill must contain ground for relief. There must be equity in the case, when fully stated and correctly applied to the proper parties, sufficient to warrant a decree.' And, in 1 Daniell's Ch. Pr. (5th ed.) 384, the author, after alluding to the rule in reference to amendments, observes: 'The instances, however, in which this will be done are confined to these where it appears, from the case made by the bill, that the plaintiff is entitled to relief, although different from that sought by the specific prayer; when the object of the proposed amendment is to make a new case, it will not be permitted.' "

In *Bowe* v. *Scott*, 113 Va. 499, 502, 75 S. E. 123, 124, Whittle, J., quotes with approval the following language from Judge Grinnan of the trial court: "When the proceedings in a cause have reached the stage that they have reached in this suit, a motion to file an amended bill is received with reluctance, and not granted but for some good reason. If such an innovation as is here desired were to be granted, it would open a precedent whereby suits might be greatly and unnecessarily prolonged, to the inconvenience, delay, and expense of litigants. Instead of a plaintiff being at pains to state his whole case in his bill, as he ought to do, if possible, he would be at liberty to present his case to the court by piecemeal; and the announcement of the court's decision would serve no other purpose than to give notice that the bill needed additional allegations. While the courts are liberal in allowing amendments, the indulgence has never gone to this extent. * * * Courts have discretion in these matters, but this discretion is, in no sense, an arbitrary or capricious one. It is a discretion that is at all times hedged about and governed by those rules that have been long established and recognized as binding upon the courts."

After making the foregoing quotation, Whittle, J., continues: "The action of the court in overruling the motion for leave to file the amended bill is well sustained by authority. 1 Bar. Chy. Pr. 324, 327; *Alsop* v. *Catlett*, 97 Va. 364, 34 S. E. 48; *Vashon* v. *Barrett*, 99 Va. 346, 38 S. E. 200; *Jackson* v. *Valley Tie Co.*, 108 Va. 714, 722, 62 S. E. 964."

The holding in *Bowe* v. *Scott, supra*, was approved by this court in *Starke* v. *Storm*, 115 Va. 651, 652, 79 S. E. 1059.

In *Richmond College* v. *Scott-Nuckols*, 124 Va. 333, 340, 98 S. E. 1, 3, it was urged upon the court that Acts 1914, p. 641, (sec. 6104, Code), made it necessary for the court at every stage of the proceeding to allow amendments, but in reply to this it was said: "It is true that the trial courts must always permit amendments in furtherance of justice and upon refusal to do so such action may be reviewed by this court; but such amendments are not matters of right and should not be permitted to delay, impede or embarrass the administration of justice."

In *Jackson, Trustee*, v. *Valley Tie Co.*, 108 Va. 714, 62 S. E. 964, it was held that: "While great liberality is allowed in amending pleadings, both at law and in equity, when a party has had every opportunity afforded him to present his own case for consideration and determination by the court, he will not be allowed, after he has ascertained what the decision of the court will be, to come forward and by means of amendments of his pleadings, obtain another hearing of matters which he might have brought forward when the case was first submitted, but declined to present. An 'amended and supplemental petition' which alleges no new matter, no after-discovered evidence, no misconduct or surprises, tenders no new proof, and gives no excuse for failure to present it before it is properly refused."

In the case in judgment the complainant knew everything when he filed his original bill that he knew when he filed the

petition.   When he filed his bill he had in his possession the original order which he now seeks to enforce, and yet he neither mentions nor refers to it in any way in the bill.   He relied in his bill upon the personal liability of the owner and upon his mechanic's lien.   The case was pending before the commissioner for about a year, and while the depositions were being taken his counsel insisted that "Mr. Austin must confine himself to matters and things pertinent to the enforcement of the lien set out in the bill."   He chose to rely upon the personal liability of the owner and his mechanic's lien as security for his debt, and after the commissioner had filed his report finding against him on both of the grounds upon which he relied, he then, for the first time, and probably at the suggestion made in the commissioner's report, filed a petition claiming an equitable assignment.   If the contention of the appellee that he had the right to file this petition be correct, then he might in the first instance, in his bill, have claimed only a mechanic's lien, and when the court decided that against him, amended by claiming personal liability of the owner under the statute, and when that was decided against him, might still further have amended by claiming an equitable assignment.   Litigants cannot be permitted thus to present their causes of action by piecemeal.   It is to the interest of the State that there should be an end to litigation, and to this end litigants should be required to present their entire cause of complaint to the court in the first instance.   Many instances arise when through mistake, accident, oversight, or other cause, the cause of action or defense has not been fully presented in the first instance where right and justice require that the pleadings should be amended so that the court may settle the whole litigation between the parties and in most instances this will be allowed, but it cannot be carried to the extent of permitting the parties to protract the litigation, and after the merits of the cause, as presented by them,

have been determined against them, seek to renew it on grounds not theretofore mentioned by them, although fully within the knowledge of the parties. In *Hurt* v. *Jones and wife*, 75 Va., *supra*, in speaking of an amended bill which was sought to be filed, it was said: "The subject matter, the facts and circumstances on which relief will depend, the relief to be granted and the relief prayed, would be essentially different in the two bills. They would have but little, if anything, in common except the identity of the parties." The same may be said of the case in judgment. There is little in common between the original bill and amended bill except the identity of the parties. The subject matter, the facts and circumstances on which relief would depend, and the relief to be granted, are essentially different in the cases presented by the two bills.

It is said in the opinion of the court that "to refuse to entertain the petition, and dismiss the original proceedings, meant another suit between the same parties, in the same court, before the same judge." Such is not my opinion. The refusal of the petition meant the end of the litigation for that cause of action. It was the same debt, and the dismissal of the original bill under the circumstances would have barred the claim to an equitable assignment. If this worked a hardship on the petitioner he had no one to blame but himself, and was in no different position from any other litigant who failed to allege and prove a case of liability on the part of the defendant.